# Exhibit A

Wolters Kluwer

**CT Corporation**
**Service of Process Notification**
10/20/2023
CT Log Number 544974315

## Service of Process Transmittal Summary

**TO:**    Ashley Button
Euler Hermes Collections North America Company, Inc
800 RED BROOK BLVD STE 400
OWINGS MILLS, MD 21117-5190

**RE:**    **Process Served in Maryland**

**FOR:**    Euler Hermes North America Insurance Company  (Domestic State: MD)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | HIGHMORE FINANCING CO. I, LLC vs. EULER HERMES NORTH AMERICA INSURANCE COMPANY INC. |
| **CASE #:** | 6550552023 |
| **NATURE OF ACTION:** | Insurance Litigation |
| **PROCESS SERVED ON:** | The Corporation Trust Incorporated, Lutherville Timonium, MD |
| **DATE/METHOD OF SERVICE:** | By Process Server on 10/20/2023 at 13:35 |
| **JURISDICTION SERVED:** | Maryland |
| **ACTION ITEMS:** | CT will retain the current log |
| | Image SOP |
| | Email Notification,  Ashley Button  ashley.button@eulerhermes.com |
| | Email Notification,  Mariya Tarasova-Jordan  mariya.tarasova-jordan@eulerhermes.com |
| | Email Notification,  Brian Blake  brian.blake@eulerhermes.com |
| | Email Notification,  Stefanie Cavalier  stefanie.cavalier@eulerhermes.com |
| | Email Notification,  Government Relations  governmentrelations@eulerhermes.com |
| | Email Notification,  Euler Hermes North America Legal  ehnalegal@eulerhermes.com |
| | Email Notification,  Justin Thatch  justin.thatch@allianz-trade.com |
| | Email Notification,  Regina Gaebel  regina.gaebel@eulerhermes.com |
| **REGISTERED AGENT CONTACT:** | The Corporation Trust Incorporated
2405 York Rd
Ste 201
Lutherville Timonium, MD 21093
866-539-8692
CorporationTeam@wolterskluwer.com |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.



# PROCESS SERVER DELIVERY DETAILS

**Date:**                         Fri, Oct 20, 2023
**Server Name:**                  Rodney Getlan

| Entity Served | EULER HERMES NORTH AMERICA INSURANCE COMPANY |
|---|---|
| Case Number | 655055/2023 |
| Jurisdiction | MD |

| Inserts | | |
|---|---|---|
| | | |



FILED: NEW YORK COUNTY CLERK 10/13/2023 05:27 PM    INDEX NO. 655055/2023
NYSCEF DOC. NO. 2                                                RECEIVED NYSCEF: 10/13/2023

NEW YORK SUPREME COURT
COMMERCIAL DIVISION, NEW YORK COUNTY

| | |
|---|---|
| HIGHMORE FINANCING CO. I, LLC, | No. _____ |
| *Plaintiff*, | |
| -against- | **COMPLAINT** |
| EULER HERMES NORTH AMERICA INSURANCE COMPANY INC. *d/b/a* ALLIANZ TRADE, | |
| *Defendant*. | |

Plaintiff Highmore Financing Co. I, LLC ("Highmore" or "Plaintiff"), by and through its

attorneys at Arnold & Porter Kaye Scholer LLP, as and for its Complaint against Defendant Euler

Hermes North America Insurance Company Inc. d/b/a Allianz Trade ("Euler Hermes" or

"Defendant"), alleges as follows:

### INTRODUCTION

1.      This case arises from Defendant's wrongful refusal to insure Highmore for losses

Highmore suffered as a victim of a targeted fraud scheme involving unpaid trade receivables.

2.      Highmore's affiliate purchased a "Corporate Advantage" insurance policy from

Euler Hermes, which was effective from January 1, 2020, through February 27, 2021. The purpose

of the policy was to insure Highmore and certain affiliates against credit losses they might suffer

as a result of unpaid insured receivables, including losses arising from the very type of fraud that

occurred here.

3.      During the policy period, Highmore provided financing to a borrower called The

Greig Companies, Inc. ("TGC" or the "Borrower") for the purchase of high-end computer servers

1

FILED: NEW YORK COUNTY CLERK 10/13/2023 05:27 PM
NYSCEF DOC. NO. 2

INDEX NO. 655055/2023
RECEIVED NYSCEF: 10/13/2023

and ancillary equipment. However, unbeknownst to Highmore at the time, the Borrower made a number of material misrepresentations and submitted falsified documents to Highmore during the diligence period concerning the Borrower's ability to repay the loans. The Borrower then defaulted on the loans, leaving $19,954,515.07 in unpaid receivables. Highmore notified Euler Hermes and made a claim under its trade credit insurance policy on March 16, 2021.

4.      Euler Hermes has failed to meet its insurance coverage obligations to Highmore. On January 19, 2023, after Highmore attempted for nearly two years to get Euler Hermes to abide by its agreement, Euler Hermes formally denied coverage in its entirety. Plaintiff now seeks damages for $19,954,515.07 caused by Euler Hermes' breach of the trade credit insurance policy.

## PARTIES

5.      Plaintiff Highmore is a Delaware limited liability company with its principal place of business at Highmore Group Advisors LLC, 1180 Avenue of the Americas, 8th Floor, New York, NY 10036. Highmore is a full-service, SEC-registered asset manager providing working capital solutions to companies.

6.      Upon information and belief, Defendant Euler Hermes North America Insurance Company Inc. is a corporation incorporated in Delaware with its principal place of business at 800 Red Brook Boulevard Owings Mills, MD 21117. Upon information and belief, Euler Hermes purports to be the global leader in trade credit insurance.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over the Defendant pursuant to CPLR Sections 301 and/or 302 as follows: Defendant regularly transacts business within the State of New York.

8.      Venue in this county is proper under CPLR 503(d): Plaintiff is an LLC with its principal place of business in New York County.

2

FILED: NEW YORK COUNTY CLERK 10/13/2023 05:27 PM
NYSCEF DOC. NO. 2

INDEX NO. 655055/2023

RECEIVED NYSCEF: 10/13/2023

## BACKGROUND

I.    HIGHMORE'S WORKING CAPITAL SOLUTIONS BUSINESS

9.    Highmore is in the business of making alternative investments, including providing working capital solutions to companies. Highmore utilized the services of its affiliate FF Supply, Inc. d/b/a Zenith Insured Credit ("Zenith"), a purchase of supplies broker, to act as the buying agent for Highmore and to identify potential transactions for Highmore that Highmore funds by either purchasing the transaction from Zenith or originating the transaction based on Zenith's sourcing information.

10.    In or about July 2019, Zenith became acquainted with TGC and introduced Highmore to TGC. TGC sought from Zenith and Highmore financing for the purchase of high-end computer servers and ancillary equipment for TGC to be installed and hosted at Datassure Corp. ("Datassure"), a TGC data technology affiliate.

11.    The transactions and receivables at issue arise from a highly sophisticated fraudulent scheme carried out by two technology companies, two computer equipment vendors, a law firm and individuals acting as executives, directors, owners, agents and/or representatives of those entities. These entities and individuals include: TGC, Datassure, Storbyte Inc. ("Storbyte"), PayRange Inc., Equinox Business Law Group PLLC, Jason Allen Greig ("Greig"), Jeffrey Sparrow, Diamond Lauffin, Steven Groenke, Joseph Drissel, Shawn Harju and others.

12.    These individuals and entities worked together to fraudulently obtain, launder, and embezzle funds from Highmore under the pretense of Highmore issuing supplier credit financing to fund the purchase of computer technology equipment. The scheme involved the use of many falsified documents, entry into multiple agreements with the knowledge that TGC was not financially capable of repayment, and the movement of Highmore's money between and among

3

FILED: NEW YORK COUNTY CLERK 10/13/2023 05:27 PM
NYSCEF DOC. NO. 2

INDEX NO. 655055/2023
RECEIVED NYSCEF: 10/13/2023

the aforementioned entities and individuals to launder and embezzle the fraudulently obtained funds in contravention of those agreements.

13.     In July 2021, Highmore filed a motion for summary judgment in lieu of complaint against Greig in Supreme Court, New York County, seeking enforcement of a September 24, 2019 guaranty agreement in which Greig personally guaranteed the performance of his company—including payment of all outstanding balances—and recovery under the same. *See Highmore Financing Co. I, LLC v. Jason Allen Greig*, Index No. 654386/21. On or about February 5, 2022, the court granted summary judgment.

14.     In December 2021, Highmore filed an action in the U.S. District Court for the Southern District of New York, which it later amended in May 2022, against these individuals and entities for violations of Racketeer Influenced And Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq.*; violations of 18 U.S.C. § 1962(d); breach of fiduciary duty; aiding and abetting breach of fiduciary duty; breach of contract; negligence; negligent misrepresentation; fraud in the inducement; unjust enrichment; and conversion. *See Highmore Financing Co. I, LLC v. The Greig Companies, Inc. et al*, No. 1:21-cv-11021-AT-JW (SDNY 2021). TGC, Greig, and Datassure defaulted in that action, and on August 1, 2023, the court issued an Order to Show Cause as to why the Court should not enter a default judgment against them pursuant to Rule 55(b) of the Federal Rules of Civil Procedure.

## II.     THE TRADE CREDIT INSURANCE POLICY ISSUED BY EULER HERMES

15.     Highmore's affiliate, Zenith, purchased a trade credit insurance policy from Euler Hermes (Policy # 5120111), effective January 1, 2020 through February 27, 2021. Highmore is insured under the Affiliate Subsidiary Endorsement to the Policy as one of the listed "*Affiliates / Subsidiaries*." A true and accurate copy of the Policy is attached as Exhibit A.

4

FILED: NEW YORK COUNTY CLERK 10/13/2023 05:27 PM
NYSCEF DOC. NO. 2

INDEX NO. 655055/2023
RECEIVED NYSCEF: 10/13/2023

16.    The Policy sets forth Euler Hermes' initial promise to indemnify credit losses sustained from unpaid insured receivables in exchange for payment in full of all premiums due. In summary, Euler Hermes agreed to pay Zenith's designees (defined in the Affiliate Subsidiary Endorsement to the Policy as "*Affiliates / Subsidiaries*") a percentage of the invoice value (defined in the Policy as the "Insured Percentage") of certain of Zenith's sales (defined in the policy as "Insured Debt") to a specific customer (defined in the Policy as the "Buyer") occurring during a specific time (defined in the Policy as the "Policy Period").

17.    The Policy's Maximum Liability is USD $20 million and the Insured Percentage is 90%. The Policy has a $2,000 Non Qualifying Loss Amount, a $50,000 Aggregate First Loss Deductible, and the Maximum Terms of Payment is 120 days.

18.    Under Section A.2, an "event of loss under the *Policy* will be when a *Buyer* fails to pay you an insured receivable for goods or services *Supplied* because. . . a *Protracted Default* has occurred . . . ."

19.    Under Section A.3:

"[a] receivable resulting from goods or services *Supplied*, including taxes (except VAT or similar sales taxes) and related transport, packing, and insurance costs, is insured if: (a) You had a valid *Permitted Limit* on the *Buyer* for the *Supply*; (b) The receivable relates to goods or services *Supplied* by you or on your behalf during a *Policy Period*; (c) On the date of *Supply* the *Buyer* did not meet the criteria defined in a, c, d, or e of the *State of Default* definition; (d) The *Supply* does not violate any applicable law or regulations (including any economic or trade sanction law or regulations of any international organization recognized under international law) and all necessary licenses, approvals, or authorizations have been obtained; (e) You have not acquired the receivable from a third party; (f) You have issued the relevant invoices withing 30 days of the date of *Supply*; (g) The *Supply* was made on credit terms no longer than the *Maximum Terms of Payment*; (h) You own the receivable and have not irrevocably transferred it to anyone else; (i) The goods or services *Supplied* comply with the description of trade specified in the *Special Terms*; or (j) The *Buyer* is domiciled in a country listed in the *Special Terms*."

5

FILED: NEW YORK COUNTY CLERK 10/13/2023 05:27 PM    INDEX NO. 655055/2023

NYSCEF DOC. NO. 2    RECEIVED NYSCEF: 10/13/2023

20.    **"Buyer"** is defined under Section E of the Policy as "a legal entity, and its branch officers, trade styles or divisions, to which you have *Supplied* the goods or services and which is responsible for the payment of the related invoice and which is domiciled in any of the countries specified in the *Special Terms*."

21.    **"Supply" / "Supplied"** is defined under Section E of the Policy as "The goods have been passed to the first independent carrier for transport to the place where the Buyer is obligated to accept them; If there is no independent carrier, the goods have been deposited into the possession of the Buyer or a third party agent who agrees to hold the goods to the order of the Buyer; or The services have been completed as contracted"

22.    **"Protracted Default"** is defined under Section E of the Policy as "the non-payment at the end of the *Waiting Period* of all or part of an insured receivable by a *Buyer* that is not *Insolvent*."

23.    Section 11 of the Policy specified the terms for Euler Hermes' payment of claims under the Policy. In relevant part, this section of the Policy provides that Euler "will make [a] *Claim Payment* . . . if a *Protracted Default* has occurred, within 60 days from the expiration of the relevant Waiting Period and [its] receipt of any additional documents or information [it] may request."

**24.**    All premiums required under the Policy were paid by the insureds.

III.    **HIGHMORE ACQUIRES RIGHTS TO A SALE AGREEMENT IN SEPTEMBER 2019**

25.    Highmore is in the business of providing working capital solutions. It utilized the services of Zenith, a purchaser of supplies broker, to act as the buying agent for Highmore and to identify a potential transaction for Highmore to fund.

6

FILED: NEW YORK COUNTY CLERK 10/13/2023 05:27 PM

NYSCEF DOC. NO. 2

INDEX NO. 655055/2023

RECEIVED NYSCEF: 10/13/2023

26.     On October 3, 2018, Highmore and Zenith entered into a program agreement whereby Zenith programmatically acts as the buying agent for Highmore and identifies potential transactions for Highmore. Highmore then funds by either purchasing the transaction from Zenith or originating the transaction based on Zenith's sourcing information.

27.     On September 24, 2019, Zenith and TGC entered into a Payment Agent Agreement (the "Sale Agreement"), which governs the "present or future sale of goods and services" between TGC, as the buyer, and Zenith, as the seller, and provided that "Seller's express acceptance of a Purchase Order by its issuance of a written sales contract or invoice (the "Sales Contract") or upon commencement of performance by Seller, these Terms and the terms of the Sales Contract become a binding contract between Buyer and Seller."

28.     On September 30, 2019, Highmore and Zenith entered into an Assignment and Transfer Agreement whereby Zenith irrevocably assigned its undivided interest in the Payment Agent Agreement to Highmore.

## IV.     HIGHMORE FUNDS TWO RELEVANT TRANSACTIONS IN JANUARY 2020

29.     Twice in January 2020, TGC submitted financing requests to Highmore for the purchase of computer equipment from Storbyte that would be delivered to TGC's affiliate, Datassure, to facilitate installation and hosting for TGC's benefit.

30.     Highmore agreed to and did fund both of TGC's financing requests, which created insured receivables as defined under the Policy in Highmore's favor.

31.     On January 17, 2020, Highmore wired $5,656,875 into an escrow account for TGC to use in its entirety as payment to Storbyte for the purchased equipment related to two Zenith's invoices, numbered 2036 and 2037, and dated January 13, 2020.

7

FILED: NEW YORK COUNTY CLERK 10/13/2023 05:27 PM
NYSCEF DOC. NO. 2

INDEX NO. 655055/2023
RECEIVED NYSCEF: 10/13/2023

32.    On January 31, 2020, Highmore wired $12,819,490.80 into an escrow account for TGC to use in its entirety as payment to Storbyte for purchased equipment related to two Zenith's invoices, numbered 2039 and 2040, and dated January 29, 2020.

33.    The services Highmore contracted to provide were "Supplied" as defined under the Policy.

34.    TGC defaulted and, to date, has not remitted the $5,656,875 from the January 17, 2020 transaction, the $12,819,490.80 from the January 31, 2020 transaction to Highmore, or the associated late and administrative fees, resulting in Protracted Default as defined under Section E of the Policy.

35.    At all times relevant, Highmore exercised reasonable care and prudence as if it were not insured, including but not limited to undertaking extensive due diligence efforts to verify the bona fides of the transaction before financing it and to know who it was dealing with.

36.    In addition to conducting its own extensive due diligence prior to funding the transactions and resulting receivables at issue, Highmore reasonably relied on Euler Hermes' assessment of the diligence materials and two separate determinations to increase the coverage limits, in part, to bolster its own comfort with advancing the additional funds.

37.    On October 28, 2019, after assessing TGC's creditworthiness and conducting due diligence, Euler Hermes approved an increase in the insured amount from $5,000,000 to $10,000,000 on the insurance policy listing Highmore as the insured entity.

38.    On December 20, 2019, after assessing TGC's creditworthiness and conducting due diligence, Euler Hermes approved a temporary increase in the insured amount on the insurance policy from $10,000,000 to $20,000,000, with the temporary increase to expire on February 28, 2020.

8

FILED: NEW YORK COUNTY CLERK 10/13/2023 05:27 PM

NYSCEF DOC. NO. 2

INDEX NO. 655055/2023

RECEIVED NYSCEF: 10/13/2023

39.    Upon information and belief, Euler Hermes communicated directly with Greig and TGC during Euler Hermes's assessment of TGC during each credit line increase. During the diligence process, Euler Hermes never raised any concerns regarding the transactions at issue.

40.    At all times relevant, Highmore took all practical measures to reduce its loss and to maximize recovery, including but not limited to taking the following actions: pursuing TGC for payment, including by engaging in multiple conversations with representatives of TGC between May 2020 and June 2021; making personal visits to Greig in California to demand payment; engaging a private investigator to interview witnesses, obtain business records, search for assets, and track Greig; and securing a judgment against Greig in the New York state court action and pursuing default judgments against Greig, TGC, and Datassure in the SDNY action. Highmore also successfully recovered two servers from Storbyte bearing serial numbers K61174150800004 and K6118CO24600004.

## V.    THE NOTIFICATION OF CLAIM AND EULER HERMES' DENIAL OF COVERAGE

41.    On March 16, 2021, Zenith submitted a claim to Euler Hermes for $19,954,515.06 based on TCG's Protracted Default and failure to pay the 4 invoices issued in January 2020 (the "Notification of Claim").

42.    Euler Hermes unnecessarily prolonged the claims process at every step. For example, Euler Hermes issued its "preliminary response" to the Notification of Claim on October 29, 2021—over seventh months after the Notification of Claim was filed.

43.    Euler Hermes also initially disputed the claim for reasons that were easily verifiable based on documents within Euler Hermes' custody and control. For example, Euler Hermes disputed that the Policy named Highmore as the proper Insured party, apparently unable to locate the Policy Euler Hermes drafted and underwrote. Euler Hermes further contended that there was

9

FILED: NEW YORK COUNTY CLERK 10/13/2023 05:27 PM

NYSCEF DOC. NO. 2

INDEX NO. 655055/2023

RECEIVED NYSCEF: 10/13/2023

no valid Permitted Limit with the Buyer, even though Euler Hermes fully underwrote the Policy, spoke to Greig, and raised the Permitted Limit to TGC. Euler Hermes also requested documents that Highmore had previously provided, such as the October 3, 2018 Program Agreement between Highmore and Zenith. Euler Hermes eventually (after much delay) conceded that none of these purported issues was in fact a barrier to coverage.

44.     On January 19, 2023—nearly two years after the Notification of Claim was submitted—Euler Hermes denied in its entirety Zenith's claim for Highmore's sales to TGC. Section 11.4(b) of the Policy provides that Allianz Trade will make the claim payment "within 60 days from the expiration of the relevant Waiting Period and . . . receipt of any additional documents or information" where a Protracted Default has occurred.

### AS AND FOR A FIRST CAUSE OF ACTION:

### BREACH OF CONTRACT

45.     Highmore incorporates by reference the allegations set forth in the paragraphs 1—44 as if fully restated herein.

46.     Highmore and Euler Hermes entered into a valid, enforceable, and binding contract (the Policy), a copy of which is annexed hereto as Exhibit A, and which is made a part hereof and incorporated herein by reference.

47.     The insureds agreed to pay in full all premiums due in full consideration for this contract.

48.     In exchange for payment in full of all premiums due, Euler Hermes agreed to cover credit losses sustained from unpaid insured receivables.

10

FILED: NEW YORK COUNTY CLERK 10/13/2023 05:27 PM    INDEX NO. 655055/2023
NYSCEF DOC. NO. 2                                    RECEIVED NYSCEF: 10/13/2023

49.    All obligations under the contract were performed by, among other things, paying all premiums due, satisfying credit management and reporting obligations, and filing a claim and collection form.

50.    Euler Hermes breached the contract by, among other things, denying the claim for coverage of unpaid insured receivables.

51.    As a result of Euler Hermes' breach of the contract, Highmore has suffered damages.

52.    The damages Highmore sustained flow directly from and are the natural and probable consequences of Euler Hermes' breach.

### AS AND FOR A SECOND CAUSE OF ACTION:

### BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

53.    Highmore repeats and realleges each and every allegation contained in paragraphs 1-52 as if fully set forth herein.

54.    The Policy is a valid, enforceable, and binding contract between Highmore and Euler Hermes.

55.    Highmore performed its obligations under the Policy.

56.    The Policy is governed by New York law, and Euler Hermes had a duty of good faith and fair dealing in performance under the Policy and dealing with Highmore.

57.    Euler Hermes' conduct in handling the coverage claim submitted by Highmore breached the covenant of good faith and fair dealing by depriving Highmore of receiving the benefits of the Policy, preventing the contract's performance, exercising contract rights malevolently for its own gain, withholding Policy benefits from Highmore, and exercising discretion afforded under the Policy in an arbitrary, irrational, or illegitimate manner.

11

FILED: NEW YORK COUNTY CLERK 10/13/2023 05:27 PM
NYSCEF DOC. NO. 2

INDEX NO. 655055/2023
RECEIVED NYSCEF: 10/13/2023

58.    Euler Hermes' breach the covenant of good faith and fair dealing includes but is not limited to: (1) unnecessarily and unreasonably delaying the claims process at every step for over two years; (2) ignoring and/or challenging evidence that supports Highmore's claim; and (3) repeatedly disputing the claim for reasons that were easily verifiable based on documents within Euler Hermes' custody and control.

59.    As a result of Euler Hermes' breach of the covenant of good faith and fair dealing, Highmore has suffered damages.

60.    Highmore's damages flow directly from and are the natural and probable consequences of Euler Hermes' breach.

## AS AND FOR A THIRD CAUSE OF ACTION:
## DECLARATORY JUDGMENT

61.    Highmore repeats and realleges each and every allegation contained in paragraphs 1-60 as if fully set forth herein.

62.    The Policy is a valid and enforceable contract that was in full force and effect at all relevant times.

63.    An actual and justiciable controversy within the meaning of CPLR 3001 exists between the parties concerning Euler Hermes' duty under the Policy to pay and reimburse Highmore for the receivables at issue.

64.    Highmore has no adequate remedy at law sufficient to compensate it in lieu of the issuance of such declaratory relief.

12

FILED: NEW YORK COUNTY CLERK 10/13/2023 05:27 PM
INDEX NO. 655055/2023
NYSCEF DOC. NO. 2
RECEIVED NYSCEF: 10/13/2023

## PRAYER FOR RELIEF

WHEREFORE, as a result of Euler Hermes' breach of the Policy, Highmore respectfully requests judgment as follows:

A. On the First Cause of Action for breach of contract, awarding damages in the amount of $19,954,515.07 plus interest;

B. On the Second Cause of Action for breach of the duty of good faith and fair dealing, awarding consequential damages in an amount to be determined at trial;

C. On the Third Cause of Action for declaratory judgment, issuing a declaration (1) that the receivables at issue are covered under the Policy, (2) that Euler Hermes is therefore obligated to pay Highmore for its insured losses, and (3) that Highmore is entitled to further or consequential relief, including but not limited to costs, expenses, and attorney fees; and

D. Granting Highmore such other and further relief as the Court deems just and proper.

Highmore demands a jury trial on all claims so triable.

13

FILED: NEW YORK COUNTY CLERK 10/13/2023 05:27 PM
NYSCEF DOC. NO. 2

INDEX NO. 655055/2023

RECEIVED NYSCEF: 10/13/2023

Dated: October 13, 2023
New York, NY

**ARNOLD & PORTER KAYE SCHOLER LLP**

/s/ Aaron F. Miner
Aaron F. Miner
Matthew F. Medina
250 West 55th Street
New York, New York 10019-9710
Telephone: (212) 836-8000
aaron.f.miner@arnoldporter.com
matthew.medina@arnoldporter.com

*Attorneys for Plaintiff*

14

FILED: NEW YORK COUNTY CLERK 10/13/2023 05:27 PM

INDEX NO. 655055/2023

NYSCEF DOC. NO. 3

RECEIVED NYSCEF: 10/13/2023

# Exhibit A

FILED: NEW YORK COUNTY CLERK 10/13/2023 05:27 PM
NYSCEF DOC. NO. 3

INDEX NO. 655055/2023
RECEIVED NYSCEF: 10/13/2023

Euler Hermes North America
(A Stock Company Established in 1893)
800 Red Brook Blvd
Owings Mills, MD 211171008
8778833224

EULER HERMES

## Special Terms

*Anything marked with an (*) can vary by country as set forth in the attached Country Schedule*

| | |
|---|---|
| Policy Type | Corporate Advantage |
| Policy # | 5120111 |
| Insured | FF SUPPLY, LLC |
| Insured Address | 445 PARK AVE FL 9<br>NEW YORK New York 10022<br>UNITED STATES |
| Insured Contact | Cole Reifler |
| Insured telephone | (646) 710-3786 |
| Insured Fax | (000) 000-0000 |
| Insured E-mail | creifler@zenithinsured.com |
| Policy Start Date | January 1, 2020<br>Beginning 12:01am standard time at the address of the insured as stated herein |
| Policy Period | January 1, 2020 - December 31, 2020 |
| Insurance Contract Period | January 1, 2020 - December 31, 2020 |
| Risks Covered | Insolvency<br>Protracted default<br>Political risk |
| Description of Trade | Misc. consumer and industrial goods |
| Annual Insurable Sales (estimated) | 100,000,000 USD |
| Premium Rate* | See attached Country schedule*<br>0.2805% Domestic Rate<br>0.2805% Export Rate |
| Expected Premium | 280,511 USD |
| Minimum Premium | 224,400 USD |
| Maximum Liability | 20,000,000 USD |
| Non Qualifying Loss Amount | 2,000 USD assessed at claim filing |
| Aggregate First Loss Deductible | 50,000 USD |
| Insured Percentage* | 90%* |
| EZ Cover Limit Amount | 75,000 USD |
| EZ Cover Insured Percentage | 90% |
| Maximum Terms of Payment* | 120 days* |

FILED: NEW YORK COUNTY CLERK 10/13/2023 05:27 PM

NYSCEF DOC. NO. 3

INDEX NO. 655055/2023

RECEIVED NYSCEF: 10/13/2023

Euler Hermes North America
(A Stock Company Established in 1893)
800 Red Brook Blvd
Owings Mills, MD 211171008
8778833224


EULER HERMES
Our knowledge serving your success

| | |
|---|---|
| Maximum Extension Period (MEP)* | 60 days* |
| State of Default Reporting Threshold | 20,000 USD |
| Delayed Effect of Withdrawal or Reduction of Cover | 90 days |
| Permitted Limit Fees: | |
| Buyers located in the United States of America (including Puerto Rico) and Canada | 55 USD Per Buyer Request |
| Buyers located in all other countries | 140 USD Per Buyer Request |
| EZ Cover Fees | 40 USD Per Buyer Request |

| Policy Administration | |
|---|---|
| Declaration Period | Annually Report is due within 15 days from the end of each Declaration Period |
| Premium Payment Method | Check, debit, wire, or E-Bill |
| Premium Terms of Payment | 15 days from the date of invoice |

FILED: NEW YORK COUNTY CLERK 10/13/2023 05:27 PM

NYSCEF DOC. NO. 3

INDEX NO. 655055/2023

RECEIVED NYSCEF: 10/13/2023

Euler Hermes North America
(A Stock Company Established in 1893)
800 Red Brook Blvd
Owings Mills, MD 211171008
8778833224



## Country Schedule

| Country | Annual Insurable Sales | Premium Rate | Maximum Terms Of Payment | Maximum Extension Period | Insured % | Country Waiting Period | Political Risk |
|---|---|---|---|---|---|---|---|
| AUSTRALIA | 350,000 USD | 0.2805% | Up to 120 days | Up to 60 days | 90% | 90 Days | Y |
| BELGIUM | 2,000,000 USD | 0.2805% | Up to 120 days | Up to 60 days | 90% | 90 Days | Y |
| BRAZIL | 400,000 USD | 0.2805% | Up to 120 days | Up to 60 days | 90% | 120 Days | Y |
| CANADA | 26,000,000 USD | 0.2805% | Up to 120 days | Up to 60 days | 90% | 0 Days | N |
| CHILE | 1,500,000 USD | 0.2805% | Up to 120 days | Up to 60 days | 90% | 120 Days | Y |
| FRANCE | 500,000 USD | 0.2805% | Up to 120 days | Up to 60 days | 90% | 90 Days | Y |
| GERMANY | 1,000,000 USD | 0.2805% | Up to 120 days | Up to 60 days | 90% | 90 Days | Y |
| GUATEMALA | 300,000 USD | 0.2805% | Up to 120 days | Up to 60 days | 90% | 120 Days | Y |
| HONG KONG | 1,500,000 USD | 0.2805% | Up to 120 days | Up to 60 days | 90% | 120 Days | Y |
| INDIA | 1,000,000 USD | 0.2805% | Up to 120 days | Up to 60 days | 90% | 120 Days | Y |
| ITALY | 350,000 USD | 0.2805% | Up to 120 days | Up to 60 days | 90% | 120 Days | Y |
| KOREA, REPUBLIC OF | 100,000 USD | 0.2805% | Up to 120 days | Up to 60 days | 90% | 120 Days | Y |

FILED: NEW YORK COUNTY CLERK 10/13/2023 05:27 PM

NYSCEF DOC. NO. 3

INDEX NO. 655055/2023

RECEIVED NYSCEF: 10/13/2023

Euler Hermes North America
(A Stock Company Established in 1893)
800 Red Brook Blvd
Owings Mills, MD 211171008
8778833224



| | | | | | | | |
|---|---|---|---|---|---|---|---|
| LUXEMBOURG | 750,000 USD | 0.2805% | Up to 120 days | Up to 60 days | 90% | 90 Days | Y |
| MALAYSIA | 100,000 USD | 0.2805% | Up to 120 days | Up to 60 days | 90% | 120 Days | Y |
| MEXICO | 50,000 USD | 0.2805% | Up to 120 days | Up to 60 days | 90% | 120 Days | Y |
| NETHERLANDS | 300,000 USD | 0.2805% | Up to 120 days | Up to 60 days | 90% | 90 Days | Y |
| NEW ZEALAND | 4,000,000 USD | 0.2805% | Up to 120 days | Up to 60 days | 90% | 90 Days | Y |
| PHILIPPINES | 1,000,000 USD | 0.2805% | Up to 120 days | Up to 60 days | 90% | 120 Days | Y |
| POLAND | 1,000,000 USD | 0.2805% | Up to 120 days | Up to 60 days | 90% | 120 Days | Y |
| REPUBLIC OF IRELAND | 500,000 USD | 0.2805% | Up to 120 days | Up to 60 days | 90% | 120 Days | Y |
| ROMANIA | 200,000 USD | 0.2805% | Up to 120 days | Up to 60 days | 90% | 120 Days | Y |
| SINGAPORE | 5,000,000 USD | 0.2805% | Up to 120 days | Up to 60 days | 90% | 120 Days | Y |
| SPAIN | 100,000 USD | 0.2805% | Up to 120 days | Up to 60 days | 90% | 120 Days | Y |
| SWEDEN | 600,000 USD | 0.2805% | Up to 120 days | Up to 60 days | 90% | 90 Days | Y |
| SWITZERLAND | 500,000 USD | 0.2805% | Up to 120 days | Up to 60 days | 90% | 90 Days | Y |
| TAIWAN | 100,000 USD | 0.2805% | Up to 120 days | Up to 60 days | 90% | 120 Days | Y |
| THAILAND | 1,000,000 USD | 0.2805% | Up to 120 days | Up to 60 days | 90% | 120 Days | Y |
| UNITED ARAB | 500,000 USD | 0.2805% | Up to 120 days | Up to 60 days | 90% | 120 Days | Y |

FILED: NEW YORK COUNTY CLERK 10/13/2023 05:27 PM

NYSCEF DOC. NO. 3

INDEX NO. 655055/2023

RECEIVED NYSCEF: 10/13/2023

Euler Hermes North America
(A Stock Company Established in 1893)
800 Red Brook Blvd
Owings Mills, MD 211171008
8778833224


EULER HERMES
Our knowledge serving your success

| EMIRATES | | | | | | | |
|---|---|---|---|---|---|---|---|
| UNITED KINGDOM | 50,000 USD | 0.2805% | Up to 120 days | Up to 60 days | 90% | 90 Days | Y |
| UNITED STATES | 48,950,000 USD | 0.2805% | Up to 120 days | Up to 60 days | 90% | 0 Days | N |
| VIRGIN ISLANDS, BRITISH | 300,000 USD | 0.2805% | Up to 120 days | Up to 60 days | 90% | 120 Days | Y |

FILED: NEW YORK COUNTY CLERK 10/13/2023 05:27 PM
NYSCEF DOC. NO. 3
INDEX NO. 655055/2023
RECEIVED NYSCEF: 10/13/2023




Euler Hermes North America
(A Stock Company Established in 1893)
800 Red Brook Blvd
Owings Mills, MD 211171008
8778833224

## Endorsements

**Endorsement numbers that end in O are imbedded in your General Terms and Conditions.
**Endorsement numbers that end in E will attach after your General Terms and Conditions.

| End # A1-003-E | Affiliate Subsidiary Endorsement |
| End # A2-001-E | Political Risk Endorsement |
| End # A3-007-E | Preferential Payment Endorsement |
| End # B7-020-E | CAP & CAP+ Endorsement |
| End # B7-022-E | EZ Cover Endorsement |
| End # DCA-001-E | Debt Collection Services Endorsement |
| End # RISA-001-E | Risk Information Services Endorsement |
| End # A4-005-O | Coverage for Public Buyer Endorsement |
| End # B6-100-O | Insured Sales to Covered Buyers Endorsement |
| End # C7-100-O | Permitted Limit Effective Date Endorsement |
| End # C8-100-O | Claim Filing Period Endorsement |
| End # C11-003-O | Calculation of Claim Payment with an Aggregate First Loss Deductible Endorsement |
| End # E-001-O | Definition of Non Qualifying Loss Endorsement |
| End # C10-003-O | Definition of Waiting Period Endorsement |
| End # NY-001-E | New York Endorsement |

AUTHENTICATION:

FILED: NEW YORK COUNTY CLERK 10/13/2023 05:27 PM

NYSCEF DOC. NO. 3

INDEX NO. 655055/2023

RECEIVED NYSCEF: 10/13/2023



Euler Hermes North America
(A Stock Company Established in 1893)
800 Red Brook Blvd
Owings Mills, MD 211171008
8778833224

James Daly
President & CEO

Karl Coutet
Senior Vice President & Secretary

FILED: NEW YORK COUNTY CLERK 10/13/2023 05:27 PM
NYSCEF DOC. NO. 3

INDEX NO. 655055/2023

RECEIVED NYSCEF: 10/13/2023



**EH Corporate Advantage Policy**
**General Terms and Conditions**

**Euler Hermes North America Insurance Company**
**800 Red Brook Blvd**
**Owings Mills, MD 211171008**
**A Stock Company**

## Policy Contents

**A. Scope of your *Policy***
    1. Insuring agreement
    2. Event and date of loss
    3. Insured receivable
    4. Uninsured receivable

**B. Managing your *Policy***
    5. Your credit management and reporting obligations
    6. Your *Insured Sales*, calculation and payment of premium
    7. Your Permitted Limits

**C. Claims and Debt Collection**
    8. Making a claim under your *Policy* by filing a *Claim and Collection form*
    9. Collection Authorization
    10. *Recoveries*
    11. *Claim Payment*
    12. Maximum Liability
    13. Subrogation
    14. Shared risk
    15. Assignment of your *Policy* or of your *Claim Payment*

**D. General conditions**
    16. Your Application
    17. Inspection of documents
    18. Notices, amendments and waiver
    19. *Policy* currency
    20. Set off
    21. Applicable taxes, duties and other charges
    22. *Policy* duration
    23. Language, applicable law and jurisdiction
    24. *Policy* Authentication

**E. Definitions under your *Policy***

GTC-001-US-EN V.1 (8/16)

Euler Hermes North America Insurance Company

FILED: NEW YORK COUNTY CLERK 10/13/2023 05:27 PM

NYSCEF DOC. NO. 3

INDEX NO. 655055/2023

RECEIVED NYSCEF: 10/13/2023

EULER HERMES
Our knowledge serving your success

## EH Corporate Advantage Policy
## General Terms and Conditions

## A. Scope of your *Policy*

### 1. Insuring agreement

We, Euler Hermes North America Insurance Company, have issued the *Policy* to you, the Insured named in the *Special Terms*, to cover you for credit losses you sustain from unpaid insured receivables. This is in exchange for payment in full of all premiums due, and is subject to all the terms and conditions of the *Policy*.

The words and phrases in bold italics are defined in section E and have the same meaning wherever used in the *Policy*.

### 2. Event and date of loss

The event of loss under the *Policy* will be when a *Buyer* fails to pay you an insured receivable for goods or services *Supplied* because of one of the following, whichever occurs first:

a.   The *Buyer* has become *Insolvent* (the date of loss will be the date of *Insolvency*); or
b.   A *Protracted Default* has occurred (the date of loss will be the expiration of the relevant *Waiting Period*).

### 3. Insured receivable

A receivable resulting from goods or services *Supplied*, including taxes (except VAT or similar sales taxes) and related transport, packing and insurance costs, is insured if:

a.   You had a valid *Permitted Limit* on the *Buyer* for the *Supply*;
b.   The receivable relates to goods or services *Supplied* by you or on your behalf during a *Policy Period*;
c.   On the date of *Supply* the *Buyer* did not meet the criteria defined in a, c, d, or e of the *State of Default* definition;
d.   The *Supply* does not violate any applicable law or regulations (including any economic or trade sanction law or regulations of any international organization recognized under international law) and all necessary licenses, approvals, or authorizations have been obtained;
e.   You have not acquired the receivable from a third party;
f.   You have issued the relevant invoices within 30 days of the date of *Supply*;
g.   The *Supply* was made on credit terms no longer than the *Maximum Terms of Payment*;
h.   You own the receivable and have not irrevocably transferred it to anyone else;
i.   The goods or services *Supplied* comply with the description of trade specified in the *Special Terms*; or
j.   The *Buyer* is domiciled in a country listed in the *Special Terms*.

### 4. Uninsured receivable

4.1 Unless otherwise endorsed to the *Policy*, a receivable resulting from goods or services *Supplied* is not insured in the following circumstances:

a.   If it arises from or relates to:
   i.   Contractual or legal damages or penalties;
   ii.   Exchange rate fluctuations, currency devaluations, interest on late payment, or banking or financial charges; or
   iii.   A leasing, rental, license or royalty agreement.
b.   If the goods or services to which the receivable relates were *Supplied*:
   i.   Under a consignment stock agreement;
   ii.   To an *Affiliated Buyer*;
   iii.   To a private individual acting in their personal capacity; or
   iv.   After you become *Insolvent*, go into liquidation or are dissolved, or consolidate, merge with another company, or sell all or substantially all of your assets in one or more transactions. If any of these events occur you must immediately notify us in writing.
c.   If the obligation to pay the receivable:
   i.   Has been *Disputed* by the *Buyer*;
   ii.   Has been transferred from your *Buyer* to a third party;

FILED: NEW YORK COUNTY CLERK 10/13/2023 05:27 PM     INDEX NO. 655055/2023

NYSCEF DOC. NO. 3     RECEIVED NYSCEF: 10/13/2023

EH EULER HERMES
Our knowledge serving your success

## EH Corporate Advantage Policy
## General Terms and Conditions

iii.  Has been fulfilled on or before the date of *Supply* by payment in cleared funds, including but not limited to cash, credit card or similar payment methods; or

iv.  Is to be fulfilled by a confirmed or unconfirmed irrevocable documentary letter of credit.

**4.2** Unless otherwise endorsed to the *Policy*, a receivable resulting from goods or services *Supplied* is not insured if non-payment of the receivable results directly or indirectly from:

a.  Any acts, errors, omissions, or failure by you or anyone acting on your behalf to fulfil any of the material terms and conditions of *Supply*;

b.  The *Buyer's* failure to accept your *Supply* of goods or services whether *Disputed* or not;

c.  The termination of a distribution, franchise or similar agreement by you or a company in your group;

d.  Any event arising out of nuclear reaction, nuclear radiation or radioactive contamination;

e.  Any armed conflict, war, terrorism, riot, civil disorder or any other form of violent disturbance;

f.  Any legislation, order, decree or regulation issued by any government or any international organization recognized under international law (including if you are prevented from *Supplying* goods or services);or

g.  Currency shortages, or difficulties or disruption in transferring currency.

# B. Managing your *Policy*

## 5. Your credit management and reporting obligations

### 5.1 Exercising care and preserving rights

For your insured receivables to be covered under your *Policy*:

a.  You must exercise reasonable care and prudence as if you were not insured, and

b.  You must take all practicable measures (including those reasonably requested by us) to prevent or reduce any loss and to maximize *Recoveries*, including but not limited to:

i.  Protecting and not waiving any rights against your *Buyers* and any third parties including enforcing any guarantee or security and filing your receivable against the *Insolvent Buyer* within the legal timeframe;

ii.  Making all reasonable efforts to enforce any rights under a provision, when incorporated in your sales  contract with your *Buyer*, under which you retain title to the goods *Supplied*; and

iii.  Taking all appropriate collection action, and instructing the Collection Service Provider to start the collection process by filing a *Claim and Collection form* at any time before the end of the relevant *Claim Filing Period* after which any action by you must be taken in line with our instructions.

### 5.2 Reporting a *State of Default*

Each month you need to report to us on our online information system or in writing any *Buyer* in a *State of Default*. The *State of Default* report is due no later than 15 days after the end of the calendar month in which the *State of Default* occurs. Failure to provide us with a complete and accurate *State of Default* report within the timeframe required will result in coverage being automatically terminated on all goods and services *Supplied* to the *Buyer* after the due date of the first *State of Default* report to have included the *Buyer*.

a.  You will not need to report this if:

i.  The receivables causing the *State of Default* are paid within the above period; or

ii.  You have already filed a *Claim and Collection form*.

b.  Where the *State of Default* is due to a receivable remaining overdue beyond the *Maximum Extension Period* and the total amount overdue beyond the *Maximum Extension Period* is within the applicable reporting threshold specified in the *Special Terms* you do not need to report it. If your *Buyer* then subsequently becomes *Insolvent* you will need to report it.

### 5.3 Postponing the *Due Date*

You may postpone the *Due Date* of your insured receivable without our prior written agreement unless:

a.  The period by which the *Due Date* is to be postponed exceeds the *Maximum Extension Period*; or

b.  Your *Buyer* is in a *State of Default*.

FILED: NEW YORK COUNTY CLERK 10/13/2023 05:27 PM
NYSCEF DOC. NO. 3

INDEX NO. 655055/2023
RECEIVED NYSCEF: 10/13/2023



## EH Corporate Advantage Policy
### General Terms and Conditions

## 6. Your *Insured Sales*, calculation and payment of premium

### 6.1 Your *Insured Sales*

Your sales volume is the amount used to calculate the premium. It is the total invoice value of all goods and services *Supplied* by you to covered *Buyers* during the *Policy Period.*

a.  To calculate your *Insured Sales*, you may deduct from your total sales volume the value of:
    i.  Receivables which are entirely excluded from cover by section 4.1 of your *Policy*;
    ii.  *Supplies* to a *Buyer* which are not insured because we have issued a nil *Permitted Limit* or *Supplies* made after we have withdrawn a *Permitted Limit*; and
    iii.  VAT (or similar sales taxes).
b.  You may not deduct the value of:
    i.  Credit notes you have issued, or rebates you have granted (including retrospective volume rebates, loyalty rebates and early settlement rebates), or
    ii.  Receivables where you are not entitled to a *Claim Payment* because of your failure to comply with the terms and conditions of your *Policy.*

### 6.2 Declaration and calculation of premium

For your insured receivables to remain covered under your *Policy*, you need to declare your total sales volume on our online information system or in writing within the timeframe specified in the *Special Terms*. For each *Declaration Period*, your sales should be broken down between *Insured Sales* and uninsured sales and your *Insured Sales* should be broken down Annually between Domestic and Export sales, where applicable.

By multiplying your *Insured Sales* by the applicable Premium Rate(s) specified in the *Special Terms*, we will calculate and invoice the premium you will need to pay us (and insurance taxes as required by applicable legislation) in line with the terms of payment specified in the *Special Terms.*

### 6.3 Minimum premium

A minimum premium as specified in the *Special Terms* is due for each *Policy Period*. Insurance taxes on minimum premium will be calculated using the average tax rate on the premium invoiced for the relevant *Policy Period.*

If we terminate your *Policy*, the minimum premium for the *Policy Period* then in force will become immediately due, calculated pro rata to the time that the *Policy* was on risk. If you terminate the *Policy*, no pro rata will apply.

### 6.4 Failure to declare your sales or to pay premium

a.  In the event that:
    i.  You do not pay your premium or minimum premium in full when due;
    ii.  You do not send us your sales declaration on time and in line with section 6.2; or
    iii.  You do not send us within 30 days of us asking you to do so any document or information we may reasonably request to assess your sales declaration:
    we will send you a *Notice* asking you to remedy all applicable failures.
b.  If you do not remedy such failures, we may send you a *Notice* terminating the *Policy*. We will then have no liability for insured receivables relating to goods or services *Supplied* after the date that we send this termination *Notice*. You will remain liable to pay us the minimum premium due under the *Policy* as if it had not been terminated.

## 7. Your Permitted Limits

### 7.1 Setting your *Permitted Limits*

a.  For the *Policy* to cover your insured receivables due from a *Buyer*, you need to request and obtain from us or the Risk Service Provider a *Permitted Limit* on that *Buyer* using our online information system or in writing.

GTC-001-US-EN V.1 (8/16)                                              Euler Hermes North America Insurance Company

FILED: NEW YORK COUNTY CLERK 10/13/2023 05:27 PM
NYSCEF DOC. NO. 3

INDEX NO. 655055/2023
RECEIVED NYSCEF: 10/13/2023

EULER HERMES
Our knowledge serving your success

## EH Corporate Advantage Policy
## General Terms and Conditions

b. We may issue a temporary *Permitted Limit*. The valid *Permitted Limit* for the period of time specified in our temporary *Permitted Limit* will be the sum of the temporary *Permitted Limit* and any pre-existing *Permitted Limit* for that *Buyer*.

c. If we have issued a *Permitted Limit* containing specific conditions, to be entitled to any *Claim Payment* for the *Buyer* concerned you must have met all those conditions in full.

d. If you grant credit on payment terms more favorable to your *Buyer* than the *Maximum Terms of Payment* specified in the *Special Terms*, for your receivables to be covered under the *Policy*, this needs be agreed by us on our *Permitted Limit*.

e. You are responsible for ensuring that the *Buyer* named in our *Permitted Limit* is the same legal entity to which you invoice the goods or services *Supplied*.

### 7.2 Start and continuation of *Permitted Limits*

a. Unless stated otherwise in our Endorsement, *Permitted Limits* and *Permitted Limit* increases take effect on the first day of the month of the date of the request but in no event shall they be effective prior to the start date of the *Policy*.

b. Regardless of the *Policy Period*, and unless we have issued a temporary *Permitted Limit*, no more than one *Permitted Limit* may be in effect for a *Buyer* at any time and successive *Permitted Limits* on a *Buyer* are not cumulative.

### 7.3 Amendments to your *Permitted Limits* and country cover

a. You may apply for an increase, a decrease or a cancellation of a *Permitted Limit*. Any cancellation or decrease will take effect for goods or services *Supplied* on and after the date of your request.

b. We may at any time withdraw, reduce or modify a *Permitted Limit* by issuing a *Permitted Limit* Endorsement. Any such withdrawal, reduction or modification will take effect for goods or services *Supplied* on and after the date of our Endorsement.

This effective date will be delayed by 90 days provided that:

i. Your *Buyer* is not in a *State of Default*;
ii. The *Policy* has not terminated; and
iii. This period does not exceed the expiration date where it is a temporary *Permitted Limit*, in which case the expiration date will prevail.

If the *Buyer* enters into a *State of Default* or the *Policy* is terminated after the date we issue our *Permitted Limit*, the withdrawal, reduction or modification will become immediately effective.

c. Your cover for goods or services *Supplied* after the effective date of the reduction will be the amount of the reduced *Permitted Limit* less any amounts outstanding from the *Buyer*.

d. Your cover for goods or services *Supplied* after the expiration of a temporary *Permitted Limit* will be the amount of the pre-existing *Permitted Limit* issued by us less any amounts outstanding from the *Buyer*.

e. We may at any time in writing modify your cover on a specific country for all *Buyers* domiciled in that country. Such modification will take effect 5 days after the date of the Endorsement.

f. If we withdraw a *Permitted Limit* or if we believe there is some other reason, we may require you to immediately file a *Claim and Collection form*. In the event we exercise this right under the *Policy*, you will not be responsible for any collection fees on amounts collected. Failure to comply with our request will result in no *Claim Payment* being due to you for said *Buyer*.

### 7.4 Amendment of cover when your *Buyer* enters and exits a *State of Default*

a. Cover is automatically withdrawn for receivables relating to goods or services *Supplied* at any time after the date on which a *Buyer* meets the criteria defined in a, c, d, or e of the *State of Default* definition.

b. Where we have not cancelled, withdrawn, reduced, or modified the *Permitted Limit* for the *Buyer* and no event of loss has occurred, cover on that *Buyer* will be reinstated retroactively when the *State of Default* has been resolved.

# C. Claims and Debt Collection

## 8. Making a claim under your *Policy* by filing a *Claim and Collection form*

FILED: NEW YORK COUNTY CLERK 10/13/2023 05:27 PM
NYSCEF DOC. NO. 3

INDEX NO. 655055/2023

RECEIVED NYSCEF: 10/13/2023

EH EULER HERMES
Our knowledge serving your success

## EH Corporate Advantage Policy
## General Terms and Conditions

**8.1** To make a claim for unpaid insured receivables, you need to file a *Claim and Collection form* including all receivables owed to you by the relevant *Buyer*, whether insured or not or *Disputed*. You will give us, at our request, additional supporting documents when necessary to evidence your claim against your *Buyer*.

**8.2** You must file your *Claim and Collection form* before the expiration of the earliest applicable *Claim Filing Period*:

a. Where your *Buyer* is *Insolvent*, whether or not your invoices are overdue, the *Claim Filing Period* expires 10 days after you learn of the *Insolvency*, or 90 days after the date of *Insolvency*, whichever is earlier.

b. For *Protracted Default*, the *Claim Filing Period* expires 90 days after the end of the *Maximum Extension Period*, or 180 days after the date of *Supply*, whichever is later.

c. If your *Buyer* becomes *Insolvent* during the *Claim Filing Period* for *Protracted Default*, you need to file your *Claim and Collection form* within the *Claim Filing Period* for *Protracted Default* or *Insolvency*, whichever is earlier.

## 9. Collection Authorization

When you file a *Claim and Collection form* with us against a *Buyer*, you authorize us, a Euler Hermes Group affiliate, or other third party appointed by us, to collect the receivables and to exercise all rights relating to the receivables, whether they are partly or fully insured, in line with the Debt Collection Services Endorsement. You must comply with the terms and conditions of the Debt Collection Services Endorsement and follow any instructions we may give you regarding collection action.

## 10. *Recoveries*

All *Recoveries* received from your *Buyer* or any third party will be shared between you and us as specified in this section and we will apply this allocation even if your *Buyer* or any third party suggests the *Recoveries* should be allocated differently. Any part of a *Recovery* which relates to VAT (or similar sales taxes) will be allocated to the VAT (or similar sales taxes) element of the outstanding receivables.

**10.1** *Recoveries* before settlement of your *Claim Payment*

a. You need to inform us as soon as possible of any *Recovery* received by you or on your behalf by any third party.

b. Before the date we receive your *Claim and Collection form*, we will allocate all sums recovered to invoices owed by the *Buyer* in chronological order until all covered invoices have been paid in full.

c. After the date we receive your *Claim and Collection form* but before settlement of your *Claim Payment* we will share all sums we or you collect between you and us pro rata based on the ratio between the Insured Debt and the total indebtedness of the *Buyer* at the date we receive your *Claim and Collection form*. Your share of *Recoveries* will be allocated to the total outstanding receivables due from the *Buyer* which exceeds the Insured Debt, until this amount has been recovered in full. Our share will be used to reduce the Insured Debt.

**10.2** *Recoveries* after settlement of your *Claim Payment*

a. In order for you to remain entitled to the *Claim Payment* received, you must inform us immediately of any *Recovery* received by you or any third party on your behalf and remit to us our share within 30 days of receipt of our payment request.

b. We will allocate all sums recovered between you and us pro-rata based on our respective interests in the total undisputed amount filed with us until we are fully reimbursed for the total *Claim Payment* and all related costs incurred by us. We will also share in all related costs as determined by us associated with the collection of the debt on a pro-rata basis. In determining our respective pro-rata interests, amounts retained by you through any each and every first loss amount and/or uninsured percentage shall be included in the calculation, but amounts retained by you through the aggregate first loss shall be excluded from the calculation.

## 11. *Claim Payment*

We will calculate your *Claim Payment* in accordance with the steps set out below.

**11.1** Calculation of your Insured Debt

GTC-001-US-EN V.1 (8/16)                                                    Euler Hermes North America Insurance Company

FILED: NEW YORK COUNTY CLERK 10/13/2023 05:27 PM

NYSCEF DOC. NO. 3

INDEX NO. 655055/2023

RECEIVED NYSCEF: 10/13/2023



## EH Corporate Advantage Policy
## General Terms and Conditions

a.  We will take the total amount of the receivables filed in the *Claim and Collection form*, from which we will deduct where applicable any *Recoveries* received before the date on which we received your *Claim and Collection Form*, in line with section 10.1.

b.  We will then deduct from the above calculation:
    i.  Receivables not covered under your *Policy*,
    ii.  *Disputed* receivables,
    iii.  The value of any enforceable guarantees or other security which you have not enforced, and
    iv.  The value of any rights of retention of title, when incorporated in your sales contract with your *Buyer*, which you have not made all reasonable efforts to enforce.

c.  We will then deduct the value of any applicable VAT (or similar sales taxes) from the amount calculated above.

d.  The resulting amount will be your Insured Debt unless it exceeds the applicable *Permitted Limit*, in which case, your Insured Debt will be the amount of the *Permitted Limit*.

### 11.2 Calculation of your Insured Loss

We will deduct from your Insured Debt the amount of our share of any *Recoveries* which are allocated to your Insured Debt in line with section 10.1. The resulting amount will be your Insured Loss.

### 11.3 Calculation of your *Claim Payment*

a.  We will only have liability under your *Policy* when the total value of all Insured Losses for the relevant *Policy Period* exceeds the amount of the aggregate first loss deductible specified in the *Special Terms*.

b.  We will calculate your *Claim Payment* by multiplying any amount exceeding the aggregate first loss deductible by the insured percentage specified in the *Special Terms*, or any lower insured percentage specified in the applicable *Permitted Limit* Endorsement.

c.  Such *Claim Payment* will be subject to the applicable Maximum Liability set out in section 12.

### 11.4 Making your *Claim Payment*

a.  We will make your *Claim Payment*:
    i.  If your *Buyer* is *Insolvent*, within 30 days from the date we receive your completed *Claim and Collection form* and any additional documents or information we may request. Information required by us to make a *Claim Payment* will include confirmation that the debt has been scheduled or allowed pursuant to a court order in an *Insolvency*, bankruptcy, or relief of debt proceedings, or
    ii.  If a *Protracted Default* has occurred, within 60 days from the expiration of the relevant *Waiting Period* and our receipt of any additional documents or information we may request.

b.  If any part of your receivable was *Disputed*, we will recalculate your *Claim Payment* in line with section 11 when it is no longer *Disputed*. This will happen upon our receipt of evidence that the *Buyer's* liability has been established by agreement in writing or by a final binding court judgment or arbitration award. We will make any additional *Claim Payment* due to you within 30 days from the date you provide us with such evidence. Final binding court judgment must be obtained in a jurisdiction in which the *Buyer* has a majority of its assets.

c.  If you receive a *Claim Payment* from us to which you are not entitled under the *Policy*, you will repay it to us within 30 days of our written *Notice* or of you becoming aware that you are not entitled to it.

## 12. Maximum Liability

12.1  We will have no further liability to you for a *Policy Period* when the total amount of *Claim Payments* made for receivables relating to goods or services *Supplied* during that *Policy Period* first reaches the Maximum Liability specified in the *Special Terms*, even if the total value of your *Permitted Limits* exceeds the Maximum Liability. If our liability ceases because of the Maximum Liability being reached your obligations under the *Policy* are not affected.

If we terminate the *Policy* early in line with its terms, we will recalculate the Maximum Liability pro rata for the period when the *Policy* was on risk.

FILED: NEW YORK COUNTY CLERK 10/13/2023 05:27 PM
NYSCEF DOC. NO. 3

INDEX NO. 655055/2023
RECEIVED NYSCEF: 10/13/2023



## EH Corporate Advantage Policy
## General Terms and Conditions

**12.2** If the Maximum Liability is specified in the *Special Terms* as a multiplier, we will calculate the amount applicable for a *Policy Period* by applying at any time the multiplier specified in the *Special Terms* to the greater of your premium paid or the minimum premium, excluding insurance taxes.

If we terminate the *Policy* early in line with its terms, we will recalculate the Maximum Liability based on the premium paid or the minimum premium pro-rated to the time the *Policy* was on risk, whichever is greater.

## 13. Subrogation

**13.1** As soon as we make a *Claim Payment*, we become entitled to enforce all of your rights, claims, guarantees, security, collateral, causes of action and defenses against a *Buyer* (or other third parties) relating to all receivables included in the applicable *Claim and Collection form* (our Subrogation Rights). For each *Claim Payment* made, our Subrogation Rights will end once the *Claim Payment* amount has been fully repaid to us.

**13.2** In order to receive a *Claim Payment*, you must assign to us all of your rights, claims, guarantees, security, collateral, causes of action and defenses against a *Buyer* or other third parties relating to all receivables filed in the *Claim and Collection Form*.

## 14. Shared risk

**14.1** Unless otherwise endorsed to the *Policy*, you will remain solely responsible for any part of the insured receivables owed to you by a *Buyer* which does not qualify for a *Claim Payment*. You must not assign it wholly or in part to any third party (including but not limited to any financial institution), or insure it with any other insurer. If you fail to comply with the above, we will not be liable for any *Claim Payment* relating to these insured receivables even if you have not made a claim or received a claim payment under that policy or facility.

**14.2** In addition, we will not be liable for your *Claim Payment* if the applicable insured receivables are insured or covered under any other insurance policy or facility even if you have not made a claim under that policy or facility.

## 15. Assignment of your *Policy* or of your *Claim Payment*

You may not assign the *Policy* to any third party. However, when endorsed to the *Policy*, you may assign to a third party the right to receive any *Claim Payment*.

## D. General conditions

## 16. Your Application

**16.1** You and we agree that your Application and any related supporting information provided by you or on your behalf form the basis of and are part of the *Policy*.

**16.2** For your insured receivables to be and remain covered under the *Policy*, you warrant that the information in the above documents was complete, true and accurate when we issued the *Policy* and that you will immediately notify us of any material change to the information supplied or any other material facts that may affect the risks insured under the *Policy*. This does not limit your legal obligation to act with utmost good faith at all times.

## 17. Inspection of documents

GTC-001-US-EN V.1 (8/16)                                   Euler Hermes North America Insurance Company

FILED: NEW YORK COUNTY CLERK 10/13/2023 05:27 PM
NYSCEF DOC. NO. 3
INDEX NO. 655055/2023
RECEIVED NYSCEF: 10/13/2023

EULER HERMES
Our knowledge serving your success

## EH Corporate Advantage Policy
## General Terms and Conditions

**17.1** At our request you will allow us or any of our representatives to inspect and take copies of any information, documents or records in your possession relating to your insured receivables and the *Policy*. You will take all necessary steps to obtain and produce the information, documents or records in the possession of third parties.

**17.2** Our right of inspection continues after termination of your *Policy* for all obligations arising under the *Policy* while it was in force.

## 18. Notices, amendments and waiver

**18.1** If required by law or regulation, we may amend the *Policy* terms and conditions by sending you advance *Notice*. These amendments will automatically take effect when you receive our notice.

**18.2** We do not waive any material breach by you of any term or condition of the *Policy* unless we have specifically agreed to do so in writing.

## 19. *Policy* currency

**19.1** We will cover receivables invoiced in any currency. However *Permitted Limits*, declared sales, premium, *Recoveries*, Insured Debt, Insured Loss, and *Claim Payments* will be in $USD.

**19.2** When making your sales declaration, you must convert each invoice to the *Policy* currency using the exchange rate published in The Wall Street Journal for the last working day of the month in which the invoice was raised.

**19.3** We will use the same exchange rate when calculating the amount of your Insured Debt and any related *Claim Payment*. The value of any *Recoveries* will be converted into the *Policy* currency using the exchange rate published in The Wall Street Journal for the date the *Recoveries* arise or are received.

## 20. Set off

**20.1** We alone may use any premium or other amounts you owe us or any Euler Hermes affiliate to set off any amounts that are due to you under the *Policy*, regardless of the *Insurance Contract Period*.

**20.2** You may not use any *Claim Payment* due to you as a reason to refuse or defer payment of premium or other amounts you owe us.

## 21. Applicable taxes, duties and other charges

**21.1** You alone will be responsible for paying all current and future taxes, duties and bank receipt and transfer charges arising under or in connection with the *Policy*.

**21.2** We will determine your liability to pay taxes and duties on the basis of the information you give us.

## 22. *Policy* duration

**22.1 Start, continuation and termination of cover**

**a.** Cover under your *Policy* begins for insured receivables relating to goods or services *Supplied* and invoiced on and after the *Policy* start date specified in the *Special Terms*, when you have paid your first premium installment when due.

**b.** Unless the *Policy* is terminated earlier in line with its terms, cover continues under the *Policy* from its start date for goods or services *Supplied* during:
    i.  The initial Insurance Contract Period, and
    ii.  Subsequent *Insurance Contract Periods* unless you or we give 60 days' written *Notice* of termination to take effect at the end of the relevant *Insurance Contract Period*.

FILED: NEW YORK COUNTY CLERK 10/13/2023 05:27 PM
NYSCEF DOC. NO. 3
INDEX NO. 655055/2023
RECEIVED NYSCEF: 10/13/2023

**EULER HERMES**
Our knowledge serving your success

## EH Corporate Advantage Policy
## General Terms and Conditions

c.   If the *Policy* continues for a further *Insurance Contract Period*, we will provide you with written confirmation of its terms (a renewal *Policy*).

**22.2 Specific events of termination**

Upon *Notice*, we may terminate your *Policy* with immediate effect in line with the law applicable to your *Policy*.

## 23. Language, applicable law and jurisdiction

**23.1 Language**

If the *Policy* has been provided to you in different languages, the binding version will be English.

**23.2 Applicable law and jurisdiction**

The *Policy* will be interpreted and governed in all respects by the laws and statutes of the state or Canadian province or territory named on the *Special Terms* as your address. Any provision of this *Policy* which is in conflict with these laws or statutes is amended in the minimum amount required to conform to the requirements of these laws or statutes.

## 24. *Policy* Authentication

These General Terms and Conditions, your Application, any Endorsements, and the *Special Terms* issued to you shall comprise the *Policy* of insurance issued to you and these integrate the entire understanding of the parties as to the subject matter. This *Policy* shall be considered to have been issued and accepted upon mutually agreed terms and conditions once you pay the initial premium and no coverage shall be in effect prior to such payment. The *Policy* shall be binding on us only if this *Policy* form and Endorsements bear the signatures of the President and Secretary of the company. No sales agent, broker or other person is authorized to change or waive any of the provisions of the *Policy* nor is any notice to any sales agent or broker deemed notice to the company. Any change to the *Policy* or waiver of any provision must be in writing bearing the signatures of the President and Secretary to be effective. Further, you may not rely on any representations or promises that are not expressly contained in the *Policy* in accepting the *Policy*.

For your insured receivables to be and remain covered under the *Policy*, you represent and warrant that all information that you provide to us is true, accurate and complete, whether in the Application, in any claim or in support of any claim or otherwise, and that you will immediately notify us of any material change to information provided or any other material facts that may affect the risks insured under the *Policy*. This does not limit your obligation to act with utmost good faith at all times.

If there are any material misrepresentations or omissions in any statements or information provided by you or on your behalf to us, whether in the Application, any claim or in any materials in support of these, we may rescind the Policy from inception upon 15 days written notice and you will forfeit any premium paid, to the full extent permitted by law.

## E. Definitions under your *Policy*

*"Affiliated Buyer"* means a *Buyer*:
a.   Over which you or any company in your group has direct or indirect control through participation in its management, administration or capital, or
b.   Which has similar control over you or a company in your group, or
c.   Is part of the same group as you.

*"Buyer"* means a legal entity, and its branch offices, trade styles or divisions, to which you have *Supplied* the goods or services and which is responsible for the payment of the related invoice and which is domiciled in any of the countries specified in the *Special Terms*.

*"Claim and Collection form"* means our form, completed using our online information system or in writing, by which you notify a claim to us and authorize us, a Euler Hermes Group affiliate, or other third party appointed by us to collect the debt. The *Claim and Collection form* specifies the supporting documents which you need to provide to us on filing.

GTC-001-US-EN V.1 (8/16)                                      Euler Hermes North America Insurance Company

FILED: NEW YORK COUNTY CLERK 10/13/2023 05:27 PM
NYSCEF DOC. NO. 3
INDEX NO. 655055/2023
RECEIVED NYSCEF: 10/13/2023



## EH Corporate Advantage Policy
## General Terms and Conditions

*"Claim Filing Period"* means the period during which you must submit a *Claim and Collection form* in line with section 8.

*"Claim Payment"* means an amount payable to you under the *Policy* to compensate you for the credit losses you have sustained from unpaid insured receivables.

*"Declaration Period"* means the period specified in the *Special Terms* for which your sales need to be declared to calculate your premium.

*"Dispute"/"Disputed"* means any unresolved disagreement between you and a *Buyer* that results in the *Buyer* refusing to pay you all or part of any receivables. In addition, a receivable that is subject to the assertion of an offset or counterclaim is also a *Disputed* Invoice. A *Dispute* ends when the *Buyer's* liability is established by agreement in writing or by a final binding court judgment or arbitration award. Final binding court judgment must be obtained in a jurisdiction in which the *Buyer* has a majority of its assets.

*"Due Date"* means the original date when a *Buyer* must pay a receivable under the terms of your invoice.

*"Insolvency"/ "Insolvent"* as used in this *Policy* for a *Buyer* or an Insured (an entity), occurs on the earliest date for any one of the following events:
a.  For entities located in the United States or Canada:
    i.   A voluntary or involuntary petition for relief under Title 11 (including Chapters 7, 11, and 13) of the United States Bankruptcy Code is filed by or against an entity;
    ii.  A receiver is appointed for all or part of the property of an entity;
    iii. An entity, or a third party on behalf of an entity, makes a general offer of compromise, in writing, to all of its creditors for less than its indebtedness
    iv.  Possession is taken of an entity's assets under an Assignment or Deed of Trust executed by the entity for the benefit of its creditors;
    v.   A creditors' committee is formed for the sole purpose of liquidation;
    vi.  Possession is taken of an entity's business assets under a chattel mortgage;
    vii. An entity's assets are sold under a writ of execution or attachment, or a writ of execution is returned unsatisfied;
    viii. An entity files an Assignment and/or makes a Proposal to creditors, under the Canadian Bankruptcy and Insolvency Act;
    ix.  A voluntary or involuntary petition for relief under the Companies Creditors Arrangement Act in Canada is filed by or against an entity;
    x.   A Receiving Order is made against an entity under the Canadian Bankruptcy and Insolvency Act; or
    xi.  An entity's assets are sold under the Canadian Bank Act; or a judgment ordering liquidation, or repossession of an entity's assets due to a trust deed, commercial pledge, or moveable hypotheque under the laws of each province or territory in Canada.
b.  For entities located in countries other than the United States or Canada, *Insolvency / Insolvent* occurs on the date the entity is declared bankrupt, or its liquidation has been ordered by a judiciary court, or the entity becomes the subject of a final judicial ruling declaring the entity *Insolvent*/bankrupt under any laws relating to bankruptcy or relief of debt in its country.

*"Insurance Contract Period"* means the initial duration of the *Policy* and any subsequent periods of a duration specified in the *Special Terms* for which the *Policy* continues as set out in section 22.1.b. An *Insurance Contract Period* may comprise one or several *Policy Periods*.

*"Insured Sales"* means the value of goods or services *Supplied* by you and insured under the *Policy* calculated in line with section 6.1.

*"Maximum Extension Period"* means the maximum period specified in the *Special Terms* by which you can extend the *Due Date* and work with your *Buyer* to collect payment of an insured receivable. The *Maximum Extension Period* starts on the day after the *Due Date*.

GTC-001-US-EN V.1 (8/16)                                          Euler Hermes North America Insurance Company

FILED: NEW YORK COUNTY CLERK 10/13/2023 05:27 PM
NYSCEF DOC. NO. 3

INDEX NO. 655055/2023
RECEIVED NYSCEF: 10/13/2023

**EH Corporate Advantage Policy**
**General Terms and Conditions**

*"Maximum Terms of Payment"* means the maximum period specified in the *Special Terms* for the *Buyer* to pay a receivable.

*"Non-Qualifiying Loss Amount"* means the minimum amount, if stated on the *Special Terms*, below which losses do not qualify for indemnification and are to be retained by you for your own account.

*"Notice"* means the following agreed methods of communication: Telephone, facsimile, or e-mail.

*"Permitted Limit"* means the maximum amount of credit and the specific conditions for which a *Buyer* is covered either as specified in the *Permitted Limit* Endorsement issued by us (or the Risk Service Provider named in the Risk Information Services Endorsement) or qualified per the Discretionary Limit Endorsement, if added to the *Policy*. The *Permitted Limit* may also be referred to as an Approved Limit in our communications with you.

*"Policy"* means this Credit Insurance agreement including these General Terms and Conditions, your Application, the *Special Terms*, and any Endorsements issued under or in connection with the *Policy*, including our *Permitted Limit* Endorsements.

*"Policy Period"* means any period specified in the *Special Terms* included in an *Insurance Contract Period*.

*"Protracted Default"* means the non-payment at the end of the *Waiting Period* of all or part of an insured receivable by a *Buyer* that is not *Insolvent*.

*"Recovery"/ "Recoveries"* means any:
a. Money received from the *Buyer*, or any third party on behalf of the *Buyer*, including dividends received out of the *Buyer's Insolvent* estate;
b. Indemnities, guarantees or other security obtained and realized;
c. Goods recovered and sold;
d. Counter claims or set-off applied or available; and/or
e. Other advantages or rights of actions available against the *Buyer* or any third party.

*"Special Terms"* means the part of the *Policy* named the *Special Terms*.

*"State of Default"* means the situation of a *Buyer* immediately after:
a. The *Buyer* has become *Insolvent*;
b. A receivable due to you is outstanding beyond the expiration of the *Maximum Extension Period* (excluding *Disputed* receivables) or the postponed *Due Date* agreed by us, whichever is later;
c. The *Buyer's* payment order or request has been rejected by its bank;
d. You commence legal proceedings against the *Buyer*; or
e. You become aware of any event or information that indicates that your receivable may not or will not be paid by your *Buyer*.

*"Supply"/ "Supplied"* means (and a *"Supply"* will be interpreted accordingly):
a. The goods have been passed to the first independent carrier for transport to the place where the *Buyer* is obliged to accept them;
b. If there is no independent carrier, the goods have been deposited into the possession of the *Buyer* or a third party agent who agrees to hold the goods to the order of the *Buyer*; or
c. The services have been completed as contracted.

*"Waiting Period"* means the relevant period specified in the *Special Terms* which starts from the original due date of a receivable.

GTC-001-US-EN V.1 (8/16)                                    Euler Hermes North America Insurance Company

FILED: NEW YORK COUNTY CLERK 10/13/2023 05:27 PM

NYSCEF DOC. NO. 3

INDEX NO. 655055/2023

RECEIVED NYSCEF: 10/13/2023

## EH Corporate Advantage Policy
## General Terms and Conditions

IN WITNESS WHEREOF, Euler Hermes North America Insurance Company has caused this Policy to be signed by the signature or facsimile signature of its authorized Officers at Owings Mills, Maryland.

AUTHENTICATED:

_James Daly_
_President & CEO_

_Karl Coutet_
_Senior Vice President & Secretary_

GTC-001-US-EN V.1 (8/16)                    Euler Hermes North America Insurance Company

FILED: NEW YORK COUNTY CLERK 10/13/2023 05:27 PM    INDEX NO. 655055/2023
NYSCEF DOC. NO. 3    RECEIVED NYSCEF: 10/13/2023



Effective date: 1/1/2020 12:01 AM

## Affiliate Subsidiary Endorsement

It is mutually agreed that this Endorsement is made part of Policy No 5120111 issued by Euler Hermes North America Insurance Company to:

FF SUPPLY, LLC
NEW YORK, NEW YORK

1.  It is agreed that cover under the *Policy* is extended to include receivables resulting from goods or services *Supplied* by any of the *Affiliates / Subsidiaries* set forth below.

2.  For the purpose of this Endorsement:
    a.  "*Managing Insured*" means the Insured named in the *Special Terms*;
    b.  "*Affiliates / Subsidiaries*" means any of the legal entities named below; and
    c.  Any reference to "you" or "your" in this Endorsement and in the General Terms and Conditions of the *Policy* shall mean the *Managing Insured* and each of the *Affiliates / Subsidiaries* collectively.

3.  It is agreed that the *Managing Insured* and each of the *Affiliates / Subsidiaries* shall be insured under the *Policy*. The rights and obligations and the cover under the *Policy* will be joint and not several.

4.  The *Managing Insured* and each of the *Affiliates / Subsidiaries* are fully authorized to act on behalf of each other in any dealings with us. Any notifications and declarations to us can be made by either the *Managing Insured* or any of the *Affiliates / Subsidiaries*. All notifications by us in respect of the *Policy* will be made to the *Managing Insured* only.

5.  The *Managing Insured* must provide to us in line with section 6 of the General Terms and Conditions of the *Policy* the details for premium calculation.

6.  Any *Permitted Limit* on a *Buyer* issued by us or the Risk Service Provider will apply collectively and not cumulatively to receivables resulting from goods or services *Supplied* to that *Buyer* by the *Managing Insured* and any of the *Affiliates / Subsidiaries*.

| Affiliate / Subsidiary Name | Affiliate / Subsidiary EHID |
|---|---|
| Highmore Financing Co. I, LLC | NEW YORK, NY |
| Supply Purchase 1, LLC | NEW YORK, NY |
| Supply Purchase I, LLC | NEW YORK, NY |

This Endorsement does not vary, alter, waive, or extend any of the terms and conditions of this *Policy* except as expressly stated in this Endorsement.

**James Daly**
**President & CEO**

**Karl Coutet**
**Senior Vice President & Secretary**

A1-003-E / V.1  (8/16)                                   EULER HERMES NORTH AMERICA INSURANCE COMPANY

FILED: NEW YORK COUNTY CLERK 10/13/2023 05:27 PM
NYSCEF DOC. NO. 3

INDEX NO. 655055/2023
RECEIVED NYSCEF: 10/13/2023

Effective date: 1/1/2020 12:01 AM

## Political Risk Endorsement

It is mutually agreed that this Endorsement is made part of Policy No. 5120111 issued by Euler Hermes North America Insurance Company to:

FF SUPPLY, LLC
NEW YORK, NEW YORK

1.  It is agreed to extend cover under the *Policy* to include cover for the losses you suffer from the occurrence of a *Political Risk* event.

2.  For the purpose of this Endorsement:

    *"Political Risk"* means the non-payment of all or part of an insured receivable by a *Buyer* due to the occurrence of one of the following events in a country for which a *Waiting Period* is specified in the *Special Terms*. If there is no *Waiting Period* or the *Waiting Period* is "none," there shall be no *Political Risk* cover for *Buyers* located in that country.

    a.  Inconvertibility and Transfer Risk:
        A law or a measure having the force of law, which prevents your *Buyer* in its country from legally converting local currency into the required currency for payment and/or from effecting transfer of payment to you. An event of loss will be deemed to occur if:
        i.  The *Buyer* has made a local currency deposit for your account in a bank or other government authorised depository prior to the expiry of the *Maximum Extension Period*; and
        ii. The application for transfer of these funds to you has been refused.

    b.  Government intervention:
        i.  An intervention is made by the government of your *Buyer's* country which legally prevents your *Buyer* from fulfilling its payment obligations.
        ii. An act of confiscation, expropriation, nationalisation, seizure, requisition, or willful destruction of the goods *Supplied* is made by the government of your *Buyer's* country.
        iii. The cancellation of export or import licenses immediately prior to date of *Supply*, provided this has not occurred as a result of the action or inaction of either party to the transaction.
        iv. The imposition of restrictions on the export or import of goods or services which were not subject to such restrictions immediately prior to date of *Supply*, provided this has not occurred as a result of the action or inaction of either party to the transaction.
        v.  The enactment and enforcement of any law, order, decree, regulation, or embargo having the force of law which prevents the export or import of goods or services, provided this has not occurred as a result of the action or inaction of either party to the transaction.

    c.  War / Civil Violence:
        An event of war, civil war, rebellion, revolution, insurrection, or other civil disturbance occurs in your *Buyer's* country after the date the goods are *Supplied* which directly prevents either:
        i.  The goods being delivered; or
        ii. Your *Buyer* from fulfilling its payment obligations.

The definition of *"State of Default"* subsection e is extended to include you becoming aware of a *Political Risk* occurring in your *Buyer's* country.

A2-001-E / V.1 (8/16)                                    Euler Hermes North America Insurance Company

FILED: NEW YORK COUNTY CLERK 10/13/2023 05:27 PM
NYSCEF DOC. NO. 3

INDEX NO. 655055/2023

RECEIVED NYSCEF: 10/13/2023

 EULER HERMES

Effective date: 1/1/2020 12:01 AM

3. Section 2. of the General Terms and Conditions of the *Policy* is amended to include the following:

   c. *Political Risk* has occurred (the date of loss will be the expiration of the relevant *Waiting Period*).

4. In addition to section 4. of the General Terms and Conditions of the *Policy*, a receivable resulting from goods or services *Supplied* is not insured under this Endorsement if it arises from or relates to currency devaluations including but not limited to any shortfall between the Insured Debt and the value of any local currency deposit required under *Political Risk*,

5. Notwithstanding section 4.1.c. of the General Terms and Conditions of the *Policy*, an unconfirmed irrevocable documentary letter of credit is insured under the terms and conditions of this Endorsement.

6. Unless otherwise endorsed to the **Policy**, a receivable resulting from goods or services **Supplied** is not insured if non-payment of the receivable results directly or indirectly from any event arising in a country to which the goods or services are *Supplied* is not your *Buyer's* country.

7. For *Political Risk* cover, the *Claim Filing Period* expires 30 days after the occurrence of the *Political Risk* event.

8. For *Political Risk* cover, any *Claim Payment* will be made within 60 days from expiration of the *Waiting Period* and our receipt of any additional documents or information we may request.

This Endorsement does not vary, alter, waive, or extend any of the terms and conditions of this *Policy* except as expressly stated in this Endorsement.

_____
*James Daly*
*President & CEO*

_____
*Karl Coutet*
*Senior Vice President & Secretary*

A2-001-E / V.1  (8/16)                                        Euler Hermes North America Insurance Company

FILED: NEW YORK COUNTY CLERK 10/13/2023 05:27 PM

NYSCEF DOC. NO. 3

INDEX NO. 655055/2023

RECEIVED NYSCEF: 10/13/2023



Effective date: 1/1/2020 12:01 AM

## Preferential Payment Endorsement

It is mutually agreed that this Endorsement is made part of Policy No. 5120111 issued by Euler Hermes North America Insurance Company to:

FF SUPPLY, LLC
NEW YORK, NEW YORK

1.  It is agreed that cover is extended to include the losses you sustain due to the return of any part of a *Preferential Payment* which you are legally obliged to pay.

2.  For the purpose of this Endorsement *"Preferential Payment"* means any payment received by you in respect of an insured receivable resulting from goods or services *Supplied* to a *Buyer* prior to its *Insolvency* which is reclaimed by the insolvency practitioner or other similar official appointed over the *Buyer* under the *Preferential Payment* provisions specified by the law applicable in the *Buyer's* country.

3.  For the purpose of this Endorsement the event of loss under the *Policy* will be when the *Buyer* has become *Insolvent*. The date of loss will be the date you return any part of a *Preferential Payment* which you are legally obliged to pay.

4.  With respect to this Endorsement, a receivable relating to the *Preferential Payment* is insured if:

    a.  That receivable was insured under the *Policy*;

    b.  The *Policy* and the *Preferential Payment* Endorsement have been maintained continuously from the date the goods or services have been *Supplied* through to the date the request to return the *Preferential Payment* is made;

    c.  The request to return the *Preferential Payment* has been made within 36 months from the date of the *Buyer's Insolvency*, unless otherwise endorsed to the *Policy*; and

    d.  The *Buyer* is located in the following countries: United States, Canada.

5.  To remain covered under this Endorsement, you must :

    a.  Report to us in writing within 15 days of receiving the request to return a *Preferential Payment*;

    b.  Immediately initiate and pursue any reasonable legal remedy and/or defence against the *Preferential Payment* which we require, and get agreement from us regularly on the actions taken; and

    c.  Get our written agreement before you return the *Preferential Payment*.

6.  To make a claim under this Endorsement, you need to file a *Claim and Collection form* or provide the relevant supporting documents in the event you have already made a claim in respect of this *Buyer*, within 15 days from the date of loss.

7.  We will assess any claim related to this Endorsement in line with section 11 of the General Terms and Conditions. *Claim Payments* are allocated to the *Policy Period* on the basis of the date the goods or services were *Supplied*.

A3-007-E / V.1 (8/16)                                   Euler Hermes North America Insurance Company

FILED: NEW YORK COUNTY CLERK 10/13/2023 05:27 PM

NYSCEF DOC. NO. 3

INDEX NO. 655055/2023

RECEIVED NYSCEF: 10/13/2023



Effective date: 1/1/2020 12:01 AM

8.  We will make your *Claim Payment* with respect to the *Preferential Payment* within 60 days from the day we receive your completed *Claim and Collection form* and any additional documents or information we may reasonably request.

This Endorsement does not vary, alter, waive, or extend any of the terms and conditions of this *Policy* except as expressly stated in this Endorsement.

_____
**James Daly**
**President & CEO**

_____
**Karl Coutet**
**Senior Vice President & Secretary**

A3-007-E / V.1  (8/16)                                                    Euler Hermes North America Insurance Company

FILED: NEW YORK COUNTY CLERK 10/13/2023 05:27 PM
NYSCEF DOC. NO. 3

INDEX NO. 655055/2023

RECEIVED NYSCEF: 10/13/2023



Effective date: 1/1/2020 12:01 AM

## CAP & CAP+ Endorsement

It is mutually agreed that this Endorsement is made part of Policy No 5120111 issued by Euler Hermes North America Insurance Company to:

FF SUPPLY, LLC
NEW YORK, NEW YORK

1. A CAP Limit is a *Permitted Limit* issued to you for a *Buyer* on which you have an existing *Permitted Limit*, excluding cover qualified per the Discretionary Limit Endorsement or EZ Cover Endorsement, and temporary *Permitted* Limits.

2. A CAP+ Limit is a **Permitted Limit** issued to you for a **Buyer** on which your request for a **Permitted Limit** has been denied.

3. CAP Limits and CAP+ Limits are **Permitted Limits** issued to you using the following CAP Reference Number: 8820111.

4. CAP Limits

   a. You may apply for a CAP Limit on any *Buyer* on which you have an existing *Permitted Limit*, excluding cover qualified per the Discretionary Limit Endorsement or EZ Cover Endorsement and temporary *Permitted Limits*.

   b. A CAP Limit shall not exceed the amount of your existing *Permitted Limit* on that *Buyer* or $3,000,000 USD, whichever is less.

   c. Notwithstanding the above, there will be no cover under this Endorsement where cover would have been excluded by the terms and conditions of the *Policy*, including but not limited to when, at the time you request a CAP Limit, the *Buyer* is in a *State of Default*.

   d. Unless stated otherwise in our CAP *Permitted Limit* Endorsement, a CAP Limit takes effect from the first day of the month in which it is issued, but in no event shall it be effective prior to the start date of the *Policy*.

   e. You may apply for a decrease or a cancellation of a CAP Limit, which shall take effect on the date of the CAP *Permitted Limit* Endorsement reducing or cancelling the CAP Limit. Said reduction or cancellation shall not affect any other existing *Permitted Limit* on that *Buyer*.

   f. We may at any time withdraw, reduce or modify a CAP Limit by issuing a CAP *Permitted Limit* Endorsement, which shall take effect on the date of that Endorsement withdrawing, reducing or modifying the CAP Limit. Said withdrawal, reduction or modification shall not affect the existing *Permitted Limit* on that *Buyer*.

   g. If the existing *Permitted Limit* on that *Buyer* is reduced, either by you or by us, the CAP Limit on that *Buyer* will be automatically reduced so that it does not exceed the existing *Permitted Limit*.

   h. If the existing *Permitted Limit* is cancelled or withdrawn the CAP Limit on that *Buyer* will be automatically cancelled effective the same date.

   i. Unless specified otherwise in the CAP *Permitted Limit* Endorsement, the terms and conditions of the delayed period set forth in section 7.3.b of the General Terms and Conditions of the *Policy* or of any Binding Contracts Endorsement shall also apply to CAP Limits.

   j. You must report the *State of Default* of any CAP *Buyer* in accordance with section 5.2 of the General Terms and Conditions of the *Policy*.

   k. A CAP fee in the amount of $25 is payable in respect of each CAP Limit when first issued.

B7-020-E / V.1 (8/16)                                    EULER HERMES NORTH AMERICA INSURANCE COMPANY

FILED: NEW YORK COUNTY CLERK 10/13/2023 05:27 PM

NYSCEF DOC. NO. 3

INDEX NO. 655055/2023

RECEIVED NYSCEF: 10/13/2023

EULER HERMES

Effective date: 1/1/2020 12:01 AM

5. **Premium for CAP Limits**

   a. Premium for a CAP Limit shall be 1/12 of two per cent (2%) of the highest CAP Limit issued per *Buyer*, per month, to be paid on a monthly basis.

   b. You shall be responsible for a minimum premium of 3 months based on the highest value of any CAP Limit in effect during the initial 3 month period in the event you decrease or cancel a CAP Limit during this initial period.

   c. If we withdraw a CAP Limit during this initial period, you shall only be responsible for Premium for the month(s) during which the CAP Limit was in effect.

   d. After this initial period, Premium will be due in full for any calendar month for which there was any CAP Limit in effect at any time during said calendar month, including any coverage under the *Policy* delayed effect provision or any Binding Contracts Endorsement.

6. **CAP+ Limits**

   a. You may apply for a CAP+ Limit for any *Buyer* on which your request for a *Permitted Limit* has been denied.

   b. A CAP+ Limit shall not exceed $75,000 USD.

   c. Notwithstanding the above, there will be no cover under this Endorsement where cover would have been excluded by the terms and conditions of the *Policy*, including but not limited to when, at the time you request a CAP Limit, the *Buyer* is in a *State of Default*.

   d. Unless stated otherwise in our CAP+ *Permitted Limit* Endorsement, a CAP Limit takes effect on the date on which the CAP+ *Permitted Limit* Endorsement is issued.

   e. You may apply for a decrease or a cancellation of a CAP+ Limit, which shall take effect on the date of the CAP+ *Permitted Limit* Endorsement reducing or cancelling the CAP+ Limit.

   f. We may at any time withdraw, reduce or modify a CAP+ Limit by issuing a CAP+ *Permitted Limit* Endorsement, which shall take effect on the date of that Endorsement withdrawing, reducing or modifying the CAP+ Limit.

   g. The delayed period set forth in section 7. 3. b of the General Terms and Conditions of the *Policy* or of any Binding Contracts Endorsement do not apply to CAP+ Limits.

   h. You must report the *State of Default* of any CAP+ *Buyer* in accordance with section 5.2 of the General Terms and Conditions of the *Policy*.

   i. A CAP+ fee in the amount of $25 is payable in respect of each CAP+ Limit when first issued.

7. **Premium for CAP+ Limits**

   a. Premium for a CAP Limit shall be 1/12 of six per cent (6%) of the highest CAP+ Limit issued per *Buyer*, per month, to be paid on a monthly basis.

   b. You shall be responsible for a minimum premium of 3 months based on the highest value of any CAP+ Limit in effect during the initial 3 month period in the event you decrease or cancel a CAP+ Limit during this initial period.

   c. If we withdraw a CAP+ Limit during this initial period, you shall only be responsible for Premium for the month(s) during which the CAP+ Limit was in effect.

   d. After this initial period, Premium will be due in full for any calendar month for which there was any CAP+ Limit in effect at any time during said calendar month.

B7-020-E / V.1 (8/16)                                    EULER HERMES NORTH AMERICA INSURANCE COMPANY

FILED: NEW YORK COUNTY CLERK 10/13/2023 05:27 PM    INDEX NO. 655055/2023

NYSCEF DOC. NO. 3    RECEIVED NYSCEF: 10/13/2023

Effective date: 1/1/2020 12:01 AM

e. Notwithstanding section 6.1 of the General Terms and Conditions of the *Policy*, you do not need to include the invoice value of goods or services *Supplied* and covered by CAP+ Limits as part of your sales volume declared to us.

This Endorsement does not vary, alter, waive, or extend any of the terms and conditions of this *Policy* except as expressly stated in this Endorsement.

_____
*James Daly*
*President & CEO*

_____
*Karl Coutet*
*Senior Vice President & Secretary*

Page 3 of 3

B7-020-E / V.1 (8/16)    EULER HERMES NORTH AMERICA INSURANCE COMPANY

FILED: NEW YORK COUNTY CLERK 10/13/2023 05:27 PM    INDEX NO. 655055/2023
NYSCEF DOC. NO. 3                                  RECEIVED NYSCEF: 10/13/2023

Effective date: 1/1/2020 12:01 AM

## EZ Cover Endorsement

It is mutually agreed that this Endorsement is made part of Policy No 5120111 issued by Euler Hermes North America Insurance Company to:

FF SUPPLY, LLC
NEW YORK, NEW YORK

1. This Endorsement provides a specific method by which you may qualify a *Buyer* for a *Permitted Limit*.

2. This method is in addition to the methods provided under the Discretionary Limit Endorsement, if endorsed to this *Policy*. A *Permitted Limit* can only be qualified pursuant to the Discretionary Limit Endorsement or this EZ Cover Endorsement, but not both.

3. EZ Cover may not be used to cover *Buyers* for which we have issued a *Permitted Limit* Endorsement.

4. We will cover you against credit losses due to the non-payment of amounts due from a *Buyer* located in the United States or Canada, up to the limit of the EZ Cover Limit set forth on the *Special Terms*, times the coverage multiple set forth below. The EZ Cover Limit and the EZ Cover Insured Percentage are listed on the *Special Terms*.

5. General conditions for approving EZ Cover Limits:

   a. "Risk Rating" refers to the Euler Hermes Risk Grade that you obtain via our On-Line Information System.

   b. All Risk Ratings used to qualify EZ Cover Limits must have been obtained prior to the date of *Supply* and shall remain in effect for 12 months, provided you maintain a *Policy* with us.   In the event you request an updated Risk Rating, the updated Risk Rating will remain in effect for an additional 12 months, provided you maintain a Policy with us.

   c. New Risk Ratings will be automatically issued by us upon expiration unless you inform us otherwise.

   d. EZ Cover Limits are subject to section 5.2 of the General Terms and Conditions, Reporting a *State of Default*.

6. Coverage Conditions for  EZ Cover Limits:

   a. EZ Cover Limit shall  automatically cancel for future *Supplies* at any time 10% or more of the undisputed balance of all amounts owed by the *Buyer* becomes 60 days or more Past Due from the original or extended due date.   Coverage shall be automatically reinstated once the undisputed balance has been made current.

   b. If you request a Risk Rating on a *Buyer* and receive a Risk Rating of 8 or NR, you may qualify that *Buyer* pursuant to the Discretionary Limit Endorsement for *Supplies* made after the date of the Risk Rating. If you request a Risk Rating on a *Buyer* and receive a Risk Rating of 9 or 10, you may not qualify that *Buyer* pursuant to the Discretionary Limit Endorsement for *Supplies* made after the date of the Risk Rating.

   c. If you request an updated Risk Rating the following shall apply:

      i    If the Risk Rating for the *Buyer* is upgraded or is unchanged from the prior Risk Rating, the maximum we will pay you is the new EZ Cover Limit.

      ii   If the Risk Rating for a *Buyer* is downgraded from the previous Risk Rating, the previous EZ Cover Limit shall apply to all *Supplies* made up to the date of the new Risk Rating, and the amounts outstanding for *Supplies* made to that *Buyer* prior to the date of the new Risk Rating must be reduced below the new EZ Cover Limit. The amount of coverage you have for *Supplies* made under the new EZ Cover Limit is the amount of the downgraded EZ Cover Limit less any amounts outstanding from the *Buyer*.

7. Credit Criteria for securing an EZ Cover Limit:

B7-022-E / V.1 (8/16)                                    EULER HERMES NORTH AMERICA INSURANCE COMPANY

FILED: NEW YORK COUNTY CLERK 10/13/2023 05:27 PM
NYSCEF DOC. NO. 3
INDEX NO. 655055/2023
RECEIVED NYSCEF: 10/13/2023



Effective date: 1/1/2020 12:01 AM

a.  Risk Ratings must be obtained via our On-Line Information System. We will provide a date stamp on our response which will be the date of the Risk Rating. You must submit this date stamped response, together with other required documentation, at the time you file a *Claim and Collection form*.

b.  The amount of coverage will be the EZ Cover Limit set forth in the *Special Terms* times the multiplier set forth below, based on the Risk Rating:

| Risk Rating | EZ Cover Multiplier |
|---|---|
| 1 | 2 times |
| 2 | 2 times |
| 3 | 2 times |
| 4 | 2 times |
| 5 | 1 times |
| 6 | 1 times |
| 7 | 1/2 times |
| 8 | 0 times |
| 9 | 0 times |
| 10 | 0 times |
| NR (Not Rated) | 0 times |

c.  The fee charged for each Risk Rating requested shall be $40 USD. This fee covers the provision of the Risk Rating for 12 months from the date of request.

This Endorsement does not vary, alter, waive, or extend any of the terms and conditions of this *Policy* except as expressly stated in this Endorsement.

*James Daly*
*President & CEO*

*Karl Coutet*
*Senior Vice President & Secretary*

B7-022-E / V.1 (8/16)

EULER HERMES NORTH AMERICA INSURANCE COMPANY

FILED: NEW YORK COUNTY CLERK 10/13/2023 05:27 PM

NYSCEF DOC. NO. 3

INDEX NO. 655055/2023

RECEIVED NYSCEF: 10/13/2023



Effective date: 1/1/2020 12:01 AM

## Debt Collection Services Endorsement

It is mutually agreed that this Endorsement is made part of Policy No. 5120111 issued by Euler Hermes North America Insurance Company to:

FF SUPPLY, LLC
NEW YORK, NEW YORK

# A - Scope of this Endorsement

We agree to provide you with the services described in this Endorsement ("the Collections Services") in exchange for the payment of all fees and costs due to us as set forth in this Endorsement.

The Collection Services are provided in conjunction with the *Policy*.

This Endorsement does not vary, alter, waive or extend any of the terms and conditions of the *Policy* except as expressly stated in this Endorsement.

### 1. Debts in the scope of this Endorsement

    **a.** Your debts may only be included in the scope of this Endorsement if they relate to legal entities whether or not they were actually covered by the *Policy* at the time of non-payment.

    **b.** We are not able to provide Collection Services if there are fewer than 6 months remaining in the limitation period to start legal proceedings when the debts are placed with us for collection.

    **c.** We will not carry out any activity relating to your civil or criminal liability, customs obligations, export licenses or tax matters.

### 2. Collection Services

**2.1 Collection Authorization**

    **a.** We will determine and use the most appropriate methods of providing the Collection Services, including using our Euler Hermes Group affiliates or other third parties.

    **b.** By filing a *Claim and Collection form*, you authorize us, a Euler Hermes Group affiliate, or other third party appointed by us, to collect the debts and to enforce all rights relating to them on your behalf ("the Collection Authorization") including but not limited to:

        **i.** Conduct all negotiations with the *Buyer*;

        **ii.** Agree to any settlement with the *Buyer* for the *Recovery* of the debts;

        **iii.** Attempt to recover from the *Buyer* any collection costs incurred;

        **iv.** Endorse, accept, and deposit in a dedicated account, payments from *Buyers* or third parties made in settlement of the debts; and

        **v.** Deduct any Collection Fees or Collection Costs from amounts collected on your behalf.

    **c.** We may instruct a Euler Hermes Group Affiliate or third party:

        **i.** To pursue on your or our behalf any collection or legal action;

        **ii.** To distribute to us any *Recoveries*; and

        **iii.** To forward to us any relevant document.

    **d.** When required by law, the Collection Authorization must be signed by a duly authorized person and you will renew it if requested by us, our Euler Hermes Group affiliates, or other third party. We will not be responsible for any litigation regarding the validity of the Collection Authorization.

    **e.** We may cancel the Collection Authorization in writing, if you do not:

        **i.** Provide us within 30 days all information and documents that we may request to enable collection of the unpaid debts;

        **ii.** Take all steps we may request to enable collection of the unpaid debts (including starting and pursuing legal proceedings); or

        **iii.** Pay our Collection Fees or reimburse our Collection Costs when they become due.

    **f.** We may also cancel the Collection Authorization in writing if the collection action has proven or is likely to prove ineffective, including but not limited to instances where the *Buyer* cannot be located, is clearly unable to pay, or if the Collection Fees or Collection Costs would be disproportionate with the amount of potential *Recoveries*.

**2.2 *Recoveries***

DCA-001-E / V.1 (8/16)                                        Euler Hermes North America Insurance Company

FILED: NEW YORK COUNTY CLERK 10/13/2023 05:27 PM        INDEX NO. 655055/2023

NYSCEF DOC. NO. 3                                        RECEIVED NYSCEF: 10/13/2023



Effective date: 1/1/2020 12:01 AM

You will repay us within 30 days of our written request, any *Recovery* collected by us and forwarded to you if it is later disputed, dishonored or rejected, including but not limited to any fraud or error. We shall deduct any Collection Fees, Collection Costs, *Recovery* payments, or other amounts due to us or any other Euler Hermes Group affiliate or third party from any *Recovery* or other amount due to you under this Endorsement.

## B - Obligations under this Endorsement

### 3.  Our obligations
   a.  We will perform the Collection Services in line with all applicable laws and industry standards, and will treat all confidential information you have provided in complete confidence.
   b.  We shall only provide information and documentation relating to the Collection Services to our Euler Hermes Group affiliates or any third parties appointed and / or instructed by us to provide the Collection Services.
   c.  We will forward to you your share of any *Recoveries* within 30 days of receiving them.
   d.  Amounts collected after we make a *Claim payment* will be remitted to you as set forth above, net of applicable Collection Fees and Collection Costs, and shall be shared on a pro-rata basis as set forth elsewhere in the *Policy*.
   e.  After you have been indemnified under your *Policy*, we will continue to provide Collection Services to you for the applicable Collection Authorization.

### 4.  Your obligations
   a.  You will provide us with all documents and information necessary to perform the Collection Services within 30 days of our request, including but not limited to:
      i.    Correspondence relating to the debts;
      ii.   Relevant facts or information arising after submission of the *Claim and Collection form*;
      iii.  Information regarding any return of goods *Supplied*;
      iv.   Any payments received after submission of the *Claim and Collection form*; or
      v.    Any payment or settlement offer from the *Buyer*.
   b.  After you give us the Collection Authorization you will not carry out any independent negotiations with the *Buyer* or any other collection activities without prior written agreement from us or any Euler Hermes Group affiliate, or third party.

### 5.  Fees and costs

You must pay us all Collection Fees and Collection Costs within 15 days from the date of our invoice.

#### 5.1 Collection fees

   a.  The collection fees will be charged to you as detailed in section D below.
   b.  We will attempt to recover the Collection Fees payable by you from the *Buyer* where permitted by the applicable law or pursuant to your agreement with your *Buyer*. Your obligation to pay these fees (or a proportion of them) will be waived upon payment of these fees by your *Buyer*.
   c.  If a debt is settled directly with you by your *Buyer* or any third party, you will immediately inform us and pay all Collection Fees and Collection Costs due to us.

#### 5.2 Collection costs

You will pay us your portion of any legal and other third party costs, disbursements and expenses (including any attorneys' fees) incurred in performing the Collection Services whether or not collection attempts have been successful.

## C – Endorsement duration

### 6.  Endorsement duration and cancellation
   a.  The start date of this Endorsement is the start date of the *Policy*.
   b.  This Endorsement will be automatically cancelled on termination of your *Policy*.
   c.  Following cancellation of this Endorsement, we will continue providing the Collection Services for Collection Authorizations relating to debts which may qualify for *Claim Payments* under the *Policy*. No other debts will

DCA-001-E / V.1 (8/16)                                   Euler Hermes North America Insurance Company

FILED: NEW YORK COUNTY CLERK 10/13/2023 05:27 PM

INDEX NO. 655055/2023

NYSCEF DOC. NO. 3

RECEIVED NYSCEF: 10/13/2023



Effective date: 1/1/2020 12:01 AM

be subject to this Endorsement and you will need to enter into a separate agreement     with us for debt collection and recovery services for uninsured debts.

d.   You are responsible for paying all Collection Fees and Costs incurred, including where the Collection Services were provided after the cancellation of this Endorsement.

## D - Collection Fees and Collection Costs

a.   Collection Fees

You are responsible for the following Collection Fees on *Recoveries*:

i.   Collection Fees are payable on all *Recoveries*, received whether the receivables are insured or not, and whether they are received by us, a Euler Hermes Group affiliate, or by you. The Collection Fees will be assessed and charged to you as detailed below.

ii.   Collection Fees are payable:

-   For *Buyers* not subject to *Insolvency*, and for *Buyers* subject to *Insolvency* as defined in part b of the *Insolvency* definition, Collection Fees are payable on any *Recoveries* received before we make a *Claim Payment*,

-   For *Buyers* subject to *Insolvency* as defined in parts a or b of the *Insolvency* definition, Collection Fees are payable on any *Recoveries* received on the uncovered portion of a loss before we make a *Claim Payment*,

-   For any *Recoveries* received after we make a *Claim Payment*, Collection Fees are payable on the uncovered portion of a loss.

iii.   For all amounts collected without attorney involvement, the Collection Fee is 15% of the amount collected. For collected amounts of $100 or less, the Collection Fee is 50% of the amount collected.

iv.   For all amounts collected by an attorney without filing suit, the fees are set by the attorney engaged, and the minimum Collection Fee is 15% of the amount collected. In addition to this fee, we charge a 5% Collection Fee on collected amounts, subject to a minimum charge of $25.

v.   For all amounts collected by an attorney with filing suit, the fees are set by the attorney engaged, and the minimum Collection Fee is 15% of the amount collected. In addition to this fee, we charge a 5% Collection Fee on collected amounts, subject to a minimum charge of $25. In addition, there is an upfront non-contingent attorney retainer fee equal to 10% of the amount of the suit being filed.

b.   Collection Costs

You are responsible for the following Collection Costs incurred before a *Claim Payment* is made:

i.   *Insolvency* services, including the filing of a proof of claim for you; and

ii.   All court costs and suit fees

This Endorsement does not vary, alter, waive, or extend any of the terms and conditions of this *Policy* except as expressly stated in this Endorsement.

**James Daly**
**President & CEO**

**Karl Coutet**
**Senior Vice President & Secretary**

DCA-001-E / V.1 (8/16)

Euler Hermes North America Insurance Company

FILED: NEW YORK COUNTY CLERK 10/13/2023 05:27 PM
NYSCEF DOC. NO. 3

INDEX NO. 655055/2023



RECEIVED NYSCEF: 10/13/2023

Effective date: 1/1/2020 12:01 AM

## Risk Information Services Endorsement

It is mutually agreed that this Endorsement is made part of Policy No. 5120111 issued by Euler Hermes North America Insurance Company to:

FF SUPPLY, LLC
NEW YORK, NEW YORK

1.  This Endorsement sets out how we or EULER HERMES NORTH AMERICA INSURANCE COMPANY, the Risk Service Provider, agree to provide you with the Risk Information Services described below in exchange for the payment of all fees due to us or the Risk Service Provider, per the terms set forth below.

2.  You may apply, using our online information system or in writing, for the following Risk Information Services: the issuance of *Permitted Limit* Endorsements, including the investigation and monitoring of the credit risk of your *Buyers* for the management of your *Policy.*

3.  We will perform the Risk Information Services in line with all applicable laws and industry standards; will treat all confidential information you have provided in complete confidence; and will not share it with any third parties except for Euler Hermes affiliates.

4.  All information provided by us to you as part of the Risk Information Services may only be disclosed on a confidential basis to your intermediary, legal, or financial advisers. You may not transfer such information (whether in its original form or aggregated, restated, or transformed) to any other third party.

5.  You must pay us in full all *Permitted Limit* fees due from you under this Endorsement 15 days from the    date of our invoice. If you do not do so, we may suspend your access to our online information system.

6.  *Permitted Limit* fees are due for:

    a.  Each request for coverage on a *Buyer* for which you do not currently have a *Permitted Limit* ; and
    b.  Each request for an increase in coverage on a *Buyer*, whether or not that increase is approved.

7.  For each subsequent *Policy Period*, *Permitted Limit* fees are due  for each *Permitted Limit* in effect on the start date of that *Policy Period*. However, fees shall not be charged for *Permitted Limits* issued within 60 days prior to the expiration date of the previous *Policy Period*.

8.  *Permitted Limit* fees  will be as follows:

    a.  *Buyers* located in the United States of America        $55 USD
        (including Puerto Rico) and Canada

    b.  *Buyers* located in all other countries               $140 USD

This Endorsement does not vary, alter, waive, or extend any of the terms and conditions of this *Policy* except as expressly stated in this Endorsement.

| | |
|---|---|
| **James Daly** | **Karl Coutet** |
| President & CEO | Senior Vice President & Secretary |

RISA-001-E / V.1 (8/16)                                      Euler Hermes North America Insurance Company

FILED: NEW YORK COUNTY CLERK 10/13/2023 05:27 PM
NYSCEF DOC. NO. 3

INDEX NO. 655055/2023
RECEIVED NYSCEF: 10/13/2023



Effective date: 1/1/2020 12:01 AM

### Definition of Waiting Period Endorsement

It is mutually agreed that this Endorsement is made part of Policy No 5120111 issued by Euler Hermes North America Insurance Company to:

FF SUPPLY, LLC
NEW YORK, NEW YORK

It is hereby agreed that the definition of *Waiting Period* set forth In Section E of the General Terms and Conditions of the *Policy*, **Definitions under your** *Policy*, is deleted in its entirety and replaced with the following:

*"Waiting Period"* means the relevant period specified in the *Special Terms* which starts from the original due date of a receivable.

This Endorsement does not vary, alter, waive, or extend any of the terms and conditions of this *Policy* except as expressly stated in this Endorsement.

_____
**James Daly**
**President & CEO**

_____
**Karl Coutet**
**Senior Vice President & Secretary**

C10-003-O / V.1 (7/18)                    EULER HERMES NORTH AMERICA INSURANCE COMPANY

FILED: NEW YORK COUNTY CLERK 10/13/2023 05:27 PM    INDEX NO. 655055/2023
NYSCEF DOC. NO. 4    RECEIVED NYSCEF: 10/13/2023

NEW YORK SUPREME COURT
COMMERCIAL DIVISION, NEW YORK COUNTY

| | |
|---|---|
| HIGHMORE FINANCING CO. I, LLC, | No. _____ |
| *Plaintiff,* | **COMPLAINT** |
| -against- | |
| EULER HERMES NORTH AMERICA INSURANCE COMPANY INC. d/b/a ALLIANZ TRADE, | |
| *Defendant.* | |

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 35 of section 202.70(g) of the Uniform Rules for the Supreme and County Courts, Plaintiff Highmore Financing Co. I, LLC ("Highmore") through its counsel, states as follows:

Highmore does not have a parent corporation and no publicly held corporation owns 10% or more of its stock.

Dated: October 13, 2023

**ARNOLD & PORTER KAYE SCHOLER LLP**

By:    /s/ Aaron F. Miner
       Aaron F. Miner
       Matthew F. Medina
       250 West 55th Street
       New York, New York 10019-9710
       Telephone: (212) 836-8000
       aaron.f.miner@arnoldporter.com
       matthew.medina@arnoldporter.com

       *Attorneys for Plaintiff*

**FILED: NEW YORK COUNTY CLERK 10/13/2023 05:27 PM**    INDEX NO. 655055/2023

NYSCEF DOC. NO. 5        RECEIVED NYSCEF: 10/13/2023



# REQUEST FOR JUDICIAL INTERVENTION

**SUPREME** _____ COURT, COUNTY OF **NEW YORK**

UCS-840
(rev. 11/24/2022)

Index No: _____      Date Index Issued: _____

| | |
|---|---|
| **CAPTION**   Enter the complete case caption. Do not use et al or et ano. If more space is needed, attach a caption rider sheet.<br><br>HIGHMORE FINANCING CO. I, LLC,<br><br>                                                     Plaintiff(s)/Petitioner(s)<br><br>-against-<br><br>EULER HERMES NORTH AMERICA INSURANCE COMPANY INC. d/b/a ALLIANZ TRADE,<br><br>                                               Defendant(s)/Respondent(s) | **For Court Use Only:**<br><br>IAS Entry Date<br><br><br>Judge Assigned<br><br><br>RJI Filed Date |

## NATURE OF ACTION OR PROCEEDING     Check only one box and specify where indicated.

**COMMERCIAL**
- ○ Business Entity (Includes corporations, partnerships, LLCs, LLPs, etc.)
- ○ Contract
- ◉ Insurance (where insurance company is a party, except arbitration)
- ○ UCC (includes sales and negotiable instruments)
- ○ Other Commercial (specify): _____
  - *NOTE: For Commercial Division assignment requests pursuant to 22 NYCRR 202.70(d), complete and attach the COMMERCIAL DIVISION RJI ADDENDUM (UCS-840C).*

**TORTS**
- ○ Adult Survivors Act
- ○ Asbestos
- ○ Environmental (specify): _____
- ○ Medical, Dental or Podiatric Malpractice
- ○ Motor Vehicle
- ○ Products Liability (specify): _____
- ○ Other Negligence (specify): _____
- ○ Other Professional Malpractice (specify): _____
- ○ Other Tort (specify): _____

**SPECIAL PROCEEDINGS**
- ○ Child-Parent Security Act (specify): ○ Assisted Reproduction ○ Surrogacy Agreement
- ○ CPLR Article 75 – Arbitration     [see *NOTE* in COMMERCIAL section]
- ○ CPLR Article 78 – Proceeding against a Body or Officer
- ○ Election Law
- ○ Extreme Risk Protection Order
- ○ MHL Article 9.60 – Kendra's Law
- ○ MHL Article 10 – Sex Offender Confinement (specify): ○ Initial ○ Review
- ○ MHL Article 81 (Guardianship)
- ○ Other Mental Hygiene (specify): _____
- ○ Other Special Proceeding (specify): _____

**MATRIMONIAL**
- ○ Contested
  - *NOTE: If there are children under the age of 18, complete and attach the MATRIMONIAL RJI ADDENDUM (UCS-840M).*
  - *For Uncontested Matrimonial actions, use the Uncontested Divorce RJI (UD-13).*

**REAL PROPERTY**     Specify how many properties the application includes: ____
- ○ Condemnation
- ○ Mortgage Foreclosure (specify): ○ Residential ○ Commercial
  - Property Address: _____
  - *NOTE: For Mortgage Foreclosure actions involving a one to four-family, owner-occupied residential property or owner-occupied condominium, complete and attach the FORECLOSURE RJI ADDENDUM (UCS-840F).*
- ○ Partition
  - *NOTE: Complete and attach the PARTITION RJI ADDENDUM (UCS-840P).*
- ○ Tax Certiorari (specify): Section:____ Block:____ Lot:____
- ○ Tax Foreclosure
- ○ Other Real Property (specify): _____

**OTHER MATTERS**
- ○ Certificate of Incorporation/Dissolution [see *NOTE* in COMMERCIAL section]
- ○ Emergency Medical Treatment
- ○ Habeas Corpus
- ○ Local Court Appeal
- ○ Mechanic's Lien
- ○ Name Change/Sex Designation Change
- ○ Pistol Permit Revocation Hearing
- ○ Sale or Finance of Religious/Not-for-Profit Property
- ○ Other (specify): _____

## STATUS OF ACTION OR PROCEEDING     Answer YES or NO for every question and enter additional information where indicated.

| | YES | NO | |
|---|:---:|:---:|---|
| Has a summons and complaint or summons with notice been filed? | ◉ | ○ | If yes, date filed: _____ |
| Has a summons and complaint or summons with notice been served? | ○ | ◉ | If yes, date served: _____ |
| Is this action/proceeding being filed post-judgment? | ○ | ◉ | If yes, judgment date: _____ |

## NATURE OF JUDICIAL INTERVENTION     Check one box only and enter additional information where indicated.

- ○ Infant's Compromise
- ○ Extreme Risk Protection Order Application
- ○ Note of Issue/Certificate of Readiness
- ○ Notice of Medical, Dental or Podiatric Malpractice    Date Issue Joined: _____
- ○ Notice of Motion    Relief Requested: _____    Return Date: _____
- ○ Notice of Petition    Relief Requested: _____    Return Date: _____
- ○ Order to Show Cause    Relief Requested: _____    Return Date: _____
- ○ Other Ex Parte Application    Relief Requested: _____
- ○ Partition Settlement Conference
- ○ Poor Person Application
- ○ Request for Preliminary Conference
- ○ Residential Mortgage Foreclosure Settlement Conference
- ○ Writ of Habeas Corpus
- ◉ Other (specify): Commercial Division Assignment

FILED: NEW YORK COUNTY CLERK 10/13/2023 05:27 PM    INDEX NO. 655055/2023

NYSCEF DOC. NO. 2    RECEIVED NYSCEF: 10/13/2023

**RELATED CASES**    List any related actions.  For Matrimonial cases, list any related criminal or Family Court cases.  If none, leave blank.
If additional space is required, complete and attach the RJI ADDENDUM (UCS-840A).

| Case Title | Index/Case Number | Court | Judge (if assigned) | Relationship to instant case |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |

**PARTIES**    For parties without an attorney, check the "Un-Rep" box and enter the party's address, phone number and email in the space provided.
If additional space is required, complete and attach the RJI ADDENDUM (UCS-840A).

| Un-Rep | Parties<br>List parties in same order as listed in the caption and indicate roles (e.g., plaintiff, defendant, 3rd party plaintiff, etc.) | Attorneys and Unrepresented Litigants<br>For represented parties, provide attorney's name, firm name, address, phone and email.  For unrepresented parties, provide party's address, phone and email. | Issue Joined<br>For each defendant, indicate if issue has been joined. | Insurance Carriers<br>For each defendant, indicate insurance carrier, if applicable. |
|---|---|---|---|---|
| ☐ | Name: HIGHMORE FINANCING CO. I, LLC<br>Role(s): Plaintiff | Aaron F. Miner, Arnold & PPorter Kaye Scholer LLP, 250 West 55th Street New York, NY 10019;  (212) 836-8000; aaron.f.miner@arnoldporter.com | ○YES  ○NO | |
| ☐ | Name: EULER HERMES NORTH AMERICA INSURANCE COMPA<br>Role(s): Defendant | 800 Red Brook Boulevard Owings Mills, MD 21117; Phone: 877-883-3224; Email: USCommunications@allianz-trade.com | ○YES  ◉NO | |
| ☐ | Name:<br>Role(s): | | ○YES  ○NO | |
| ☐ | Name:<br>Role(s): | | ○YES  ○NO | |
| ☐ | Name:<br>Role(s): | | ○YES  ○NO | |
| ☐ | Name:<br>Role(s): | | ○YES  ○NO | |
| ☐ | Name:<br>Role(s): | | ○YES  ○NO | |
| ☐ | Name:<br>Role(s): | | ○YES  ○NO | |
| ☐ | Name:<br>Role(s): | | ○YES  ○NO | |
| ☐ | Name:<br>Role(s): | | ○YES  ○NO | |
| ☐ | Name:<br>Role(s): | | ○YES  ○NO | |
| ☐ | Name:<br>Role(s): | | ○YES  ○NO | |
| ☐ | Name:<br>Role(s): | | ○YES  ○NO | |
| ☐ | Name:<br>Role(s): | | ○YES  ○NO | |
| ☐ | Name:<br>Role(s): | | ○YES  ○NO | |

**I AFFIRM UNDER THE PENALTY OF PERJURY THAT, UPON INFORMATION AND BELIEF, THERE ARE NO OTHER RELATED ACTIONS OR PROCEEDINGS, EXCEPT AS NOTED ABOVE, NOR HAS A REQUEST FOR JUDICIAL INTERVENTION BEEN PREVIOUSLY FILED IN THIS ACTION OR PROCEEDING.**

Dated:    __10/13/2023__    _____
Signature

____4560652____    Aaron F. Miner
Attorney Registration Number    Print Name

Print Form
2 of 2

NYSCEF DOC. NO. 6

INDEX NO. 655706/2023

RECEIVED NYSCEF: 10/13/2023

UC6-640C
3/2011

**SUPREME COURT OF THE STATE OF NEW YORK**

**COUNTY OF New York** _____ x

HIGHMORE FINANCING CO. I, LLC,

Plaintiff(s)/Petitioner(s)

-against-

EULER HERMES NORTH AMERICA INSURANCE COMPANY INC. d/b/a

Defendant(s)/Respondent(s) _____ x

Index No. _____

RJI No. (if any) _____

**COMMERCIAL DIVISION**

**Request for Judicial Intervention Addendum**

**COMPLETE WHERE APPLICABLE** [add additional pages if needed]:

**Plaintiff/Petitioner's cause(s) of action** [check all that apply]:

☐ Breach of contract or fiduciary duty, fraud, misrepresentation, business tort (e.g. unfair competition), or statutory and/or common law violation where the breach or violation is alleged to arise out of business dealings (e.g. sales of assets or securities; corporate restructuring; partnership, shareholder, joint venture, and other business agreements; trade secrets; restrictive covenants; and employment agreements not including claims that principally involve alleged discriminatory practices)

☐ Transactions governed by the Uniform Commercial Code (exclusive of those concerning individual cooperative or condominium units)

☐ Transactions involving commercial real property, including Yellowstone injunctions and excluding actions for the payment of rent only

☐ Shareholder derivative actions — without consideration of the monetary threshold

☐ Commercial class actions — without consideration of the monetary threshold

☐ Business transactions involving or arising out of dealings with commercial banks and other financial institutions

☐ Internal affairs of business organizations

☐ Malpractice by accountants or actuaries, and legal malpractice arising out of representation in commercial matters

☐ Environmental insurance coverage

☒ Commercial insurance coverage (e.g. directors and officers, errors and omissions, and business interruption coverage)

☐ Dissolution of corporations, partnerships, limited liability companies, limited liability partnerships and joint ventures — without consideration of the monetary threshold

☐ Applications to stay or compel arbitration and affirm or disaffirm arbitration awards and related injunctive relief pursuant to CPLR Article 75 involving any of the foregoing enumerated commercial issues — without consideration of the monetary threshold

**Plaintiff/Petitioner's claim for compensatory damages** [exclusive of punitive damages, interest, costs and counsel fees claimed]:

$ $19,954,515.07 _____

**Plaintiff/Petitioner's claim for equitable or declaratory relief** [brief description]:

Plaintiff asserts the following causes of action: (1) breach of contract; (2) breach of the duty of good faith and fair dealing; and (3) declaratory judgment. As for the cause of action for declaratory judgment, Plaintiff seeks a declaration that the receivables at issue are covered under the insurance Policy issued by Defendant; that Defendant is therefore obligated to pay Plaintiff for its insured losses; and (3) that Plaintiff is entitled to further or consequential relief, including but not limited to costs, expenses, and attorney fees.

**Defendant/Respondent's counterclaim(s)** [brief description, including claim for monetary relief]:

**I REQUEST THAT THIS CASE BE ASSIGNED TO THE COMMERCIAL DIVISION. I CERTIFY THAT THE CASE MEETS THE JURISDICTIONAL REQUIREMENTS OF THE COMMERCIAL DIVISION SET FORTH IN 22 NYCRR § 202.70(a), (b) AND (c).**

Dated: 10/13/2023 _____

_____
SIGNATURE

Aaron F. Miner
PRINT OR TYPE NAME

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF** NEW YORK
-----------------------------------------------------------------x
HIGHMORE FINANCING CO. I, LLC,

Plaintiff/Petitioner,

- against -                                    Index No.655055/2023

EULER HERMES NORTH AMERICA
INSURANCE COMPANY INC. d/b/a ALLIANZ     ◼
Defendant/Respondent.
-----------------------------------------------------------------x

**NOTICE OF ELECTRONIC FILING**
**(Mandatory Case)**
(Uniform Rule § 202.5-bb)

**You have received this Notice because**:

    1) The Plaintiff/Petitioner, whose name is listed above, has filed this case using the New York State Courts E-filing system ("NYSCEF"), and

    2) You are a Defendant/Respondent (a party) in this case.

- **If you are represented by an attorney:**
  Give this Notice to your attorney.  (Attorneys: see "Information for Attorneys" pg. 2).

- **If you are not represented by an attorney:**
  **You will be served with all documents in paper and you must serve and file your documents in paper, unless you choose to participate in e-filing.**

  **If you choose to participate in e-filing, you must have access to a computer and a scanner or other device to convert documents into electronic format, a connection to the internet, and an e-mail address to receive service of documents.**

The **benefits of participating in e-filing** include:

- serving and filing your documents electronically

- free access to view and print your e-filed documents

- limiting your number of trips to the courthouse

- paying any court fees on-line (credit card needed)

**To register for e-filing or for more information about how e-filing works:**

- visit: www.nycourts.gov/efile-unrepresented or
- contact the Clerk's Office or Help Center at the court where the case was filed. Court contact information can be found at www.nycourts.gov

To find legal information to help you represent yourself visit www.nycourthelp.gov

**Information for Attorneys**
**(E-filing is Mandatory for Attorneys)**

An attorney representing a party who is served with this notice must either:

    1) immediately record his or her representation within the e-filed matter on the NYSCEF site www.nycourts.gov/efile ; or

    2) file the Notice of Opt-Out form with the clerk of the court where this action is pending and serve on all parties. Exemptions from mandatory e-filing are limited to attorneys who certify in good faith that they lack the computer hardware and/or scanner and/or internet connection or that they lack (along with all employees subject to their direction) the knowledge to operate such equipment. [Section 202.5-bb(e)]

For additional information about electronic filing and to create a NYSCEF account, visit the NYSCEF website at www.nycourts.gov/efile or contact the NYSCEF Resource Center (phone: 646-386-3033; e-mail: nyscef@nycourts.gov).

Dated: 10/20/2023

/s/ Aaron F. Miner
        Name
Arnold & Porter Kaye Scholer LLP

     Firm Name

250 West 55th Street
      Address

New York, NY 10019

(212) 836-8000
     Phone

aaron.f.miner@arnoldporter.com
      E-Mail

To:   EULER HERMES NORTH AMER

     800 Red Brook Boulevard

     Owings Mills, MD 21117